[Civ. No. 327. First Appellate District.—December 28, 1906.]

TIMOTHY P. RIORDAN, Appellant, v. GAS CONSUMERS' ASSOCIATION, Respondent.

NEGLIGENCE—MASTER AND SERVANT—LIABILITY OF MASTER.—Though the master is not liable for the negligence of a servant who acts independently without any reference to the service for which he is employed, and not for the purpose of performing the work of his employer, but to effect some independent purpose of his own; yet the master is civilly responsible for the negligent acts of his servant committed while in his service and within the scope of his employment—that is, the transaction of his master's business. The question, generally, is whether the servant, at the very time of the alleged act of negligence, had departed from his employment, or whether he departed from or neglected a duty in the time of his employment.

ID.—INJURY FROM RUNAWAY HORSE—NEGLIGENCE OF SUPERINTENDENT OF DEFENDANT—CARELESS FEEDING AT NOON.—Where defendant company hired a horse and buggy for the continual and regular use of its superintendent during each day, in the line of its employment, from 8 o'clock in the morning until 5 o'clock in the evening, with privilege of luncheon during the noon hour, and in the careless handling of the horse for the purpose of feeding it at the noon hour in violation of the instructions to him from the

livery-stable, the horse ran away to the injury of plaintiff, the defendant company is responsible for the injury.

ID.—DUTY OF SUPERINTENDENT TO CARE FOR HORSE AT NOON.—It was the duty of the superintendent, in the line of his employment, to care for the horse and feed it during the noon hour; he was superintendent during the noon hour as well as during the business hours, and could not depart from his duty of caring for the horse at noon.

ID.—APPEAL FROM ORDER GRANTING NEW TRIAL—REFUSAL OF NONSUIT —REVIEW—PRESUMPTIONS—REVERSAL OF ORDER.—Where the verdict was for the plaintiff, and a new trial was granted solely on the ground of error in refusing a nonsuit, for the reason that the superintendent, during the noon hour, was not acting in the line of his employment, it must be presumed from the record that the horse ran away through the negligence of the defendant, that plaintiff's injury resulted therefrom, that the verdict is not excessive, and that no errors of law occurred during the trial, and the order must be reversed upon the proof.

APPEAL from an order of the Superior Court of the City and County of San Francisco granting a new trial. Frank H. Kerrigan, Judge.

The facts are stated in the opinion of the court.

Sullivan & Sullivan, for Appellant.

Carter P. Pomeroy, for Respondent.

COOPER, J.—This is an appeal prosecuted by the plaintiff from an order granting the defendant a new trial.

The action was brought to recover damages for personal injuries caused through the alleged negligent and careless manner in which a certain horse attached to a buggy was managed by the defendant through its superintendent Fagan, by reason of which the horse ran away and collided with a buggy in which plaintiff was riding, thereby inflicting upon him the injuries complained of.

Plaintiff alleges that on the eleventh day of December, 1901, the date upon which the accident happened, the defendant, in the conduct of its business, used and employed a certain horse and buggy; that on said date said horse and buggy were in charge of said Fagan, a servant of the de-

fendant, and were so carelessly and negligently managed and attended to by him that the said horse ran away and collided with the buggy in which plaintiff was seated, throwing him to the ground and thereby causing the injuries complained of.

Defendant denies that on the day in question, or at any other time, the defendant, by its servant Fagan, or any other servant, carelessly or negligently managed or attended said horse; denies that at the time the said horse ran away it was in charge of said Fagan as a servant of the defendant, or that at that time said Fagan was its servant, and further denies that said horse, at the time it ran away, was in charge of the defendant, or any of its servants.

The action was tried before a jury, who rendered a verdict in favor of the plaintiff for the sum of $3,500. Thereafter a motion for new trial was made by defendant, and granted by the court below, ''upon the sole ground that the court committed error upon the trial of said action in denying the motion made by said defendant for a nonsuit therein, in this: that Fagan, through whose negligence plaintiff sustained his injuries, was not at the time the horse in his charge ran away in the defendant's employ; was not at that time engaged in carrying out his employer's business, and was not acting within the scope of his authority, and upon no other ground; and as to all other grounds upon which said motion for a new trial was made by the said defendant the said motion is denied.''

This appeal presents the sole question as to whether or not Fagan was acting within the general scope of his authority at the time he allowed the horse to escape. We must presume from the record that the horse ran away by reason of the negligence of Fagan; that the injury to plaintiff was the result of such negligence; that the verdict of the jury is not excessive, and that no errors of law occurred during the trial. It then becomes necessary to state briefly the substance of the evidence and the question presented for decision. At the time the accident occurred the defendant was, and for several years prior thereto had been, engaged in the business of manufacturing and selling a regulator to be used by the consumers of gas, having its principal place of business at the northeast

4 Cal. App.—41

corner of Post and Powell streets in the city of San Francisco, and Fagan was at said time, and for several years prior thereto had been, in the employ of defendant as superintendent of its department of construction, having power to employ and discharge men. His regular hours of employment as such superintendent were form 8 o'clock in the morning until 5 o'clock in the afternoon, during which time he was allowed from 12 o'clock M. to 1 o'clock P. M. to obtain and eat his lunch, which hour was at his own disposal. Some time prior to the accident the defendant, through its superintendent Fagan, hired the horse and buggy from the livery-stable of Holland and Kendall for the exclusive use of Fagan. The horse was known as the superintendent's horse, and used almost exclusively by him. At the time Fagan hired the horse he was informed by the proprietors of the stable that he would have to be very careful with the horse because he would not stand without being hitched, and that it would be necessary to tie the horse at every place he stopped; at the same time a weight and hitching rope were supplied and placed in the buggy. Afterward, at the request of Fagan, the proprietors of the stable furnished feed and a feed bag so that the horse might be fed at the noon hour. At the time the feed bag was given to the boy who was sent by Fagan for the horse, the boy was told to feed the horse with the bridle on and not to take it off. The residence of Fagan was on Turk street, some distance from the defendant's office, and it was his custom to take his lunch at his home, and for the purpose of going and returning from his home, he used the horse and buggy, of which he had exclusive charge, with the knowledge and consent of defendant. A young man by the name of Arnold, who was in the employ of defendant, would usually call at the livery-stable about 7 o'clock in the morning for the horse and drive it from the stable to Fagan's residence and leave it. Fagan would then at his convenience get into the buggy and drive the horse to defendant's office or other place of business where he desired to go. When Fagan's day's work was over he would drive the horse to his home, when it would be again taken charge of by Arnold, and returned to the livery-stable about half-past 6 o'clock. Fagan, as the superintendent of defendant, was intrusted with the

care of the horse from the time it was left at his house in the morning until it was taken away by Arnold in the afternoon. No one else was intrusted with the horse, or given any directions as to its care and custody. If anyone else used the horse and buggy during business hours they had first to obtain the consent of Fagan. Defendant never objected in any way or manner to Fagan using the horse and buggy to go to his lunch at the noon hour. On the day of the accident Fagan had been engaged in defendant's business at the Mills building on Montgomery street, and about 12 o'clock, or a little after, he unhitched the horse from where it had been standing in front of defendant's office, got into the buggy and drove to his place of residence. He did this for the sole purpose of getting his luncheon. He arrived home at about a quarter-past 12 o'clock, took the bridle off the horse's head before he had tied him, and while getting the feed bag, or while about to adjust the feed bag, the horse finding himself free, ran away, and hence the injuries to plaintiff.

Upon the above facts, we are of opinion that the defendant is liable, and the fact that the act of negligence was committed during the noon hour under the circumstances of this case does not relieve the defendant from responsibility. The rule is that the master is civilly liable for the negligent acts of the servant committed while in his service and within the scope of his employment, that is, the transaction of the master's business. It is also the rule that when a servant acts independently, without any reference to the service for which he is employed, and not for the purpose of performing the work of his employer, but to effect some independent purpose of his own, the master is not responsible for the negligence of the servant. These rules are well understood by the profession, but like many other simple and plain rules their application to the facts is sometimes very difficult. There are hundreds of cases in which the facts show the case to be on the border line, and some of them so close that the decision is at best an approximation. The question, generally, is whether the servant at the very time of the alleged act of negligence, had departed from his employment, or whether he departed from or neglected a duty in the line of his employment. In the first case the principal is not responsible for the servant's

acts, and in the second case he is responsible. The defendant took the exclusive charge of the horse from the time it left the stable until it was returned at night. The stable-keepers had intrusted the defendant with its care and safekeeping. They had instructed defendant's servants to be careful with the horse, and not to take the bridle off when feeding it. It was therefore the duty of defendant to take such care of the horse as a reasonably prudent person would do under similar circumstances. It being the duty of defendant to care for the horse, that duty could only be performed by some person in defendant's employ. It was the duty of defendant to take care of the horse during the noon hour. Fagan could have delegated this duty to anyone in the employ of defendant, or perhaps he could have left the horse in the stable during the noon hour, but he did not do either, but took charge of the horse himself. He, being the superintendent of defendant, took upon himself the care of the horse during the noon hour. If he had employed Arnold, or any other person, to take charge of the horse during such hour, and the negligent act had been done by such person, the defendant would be responsible. It was none the less so because done by the superintendent. It was the duty of Fagan in the line of this employment to care for the horse and feed it. He was the superintendent of defendant during the noon hour as well as during business hours. He could not depart from his duty of caring for the horse during the noon hour. He had not departed from his employment. He had not gone off on an independent mission of his own, but in feeding the horse was in the performance of a duty in the line of his employment. To hold otherwise would be to hold that if the acts had occurred in precisely the same manner they did a minute before 12 o'clock, or a minute after 1 o'clock, the defendant would be liable, but would not be liable between 12 o'clock M. and 1 o'clock P. M. The young man Arnold probably had the same business hours as Fagan, yet according to the respondent's theory, it would not have been responsible if the acts had occurred after 7 o'clock and before 8 o'clock A. M. while Arnold had charge of the horse, driving it to the residence of Fagan. Arnold had charge of the horse for

defendant before and after the regular working hours. Fagan had charge of the horse for defendant in the vacation hour between the regular working hours.

The conclusion we have reached finds support in the authorities. In the case of *Whitman* v. *Pearson,* 37 L. J. R., pt. 2, 156, it appeared that the defendant was a contractor engaged in making a sewer for the vestry of G.; one of his men, who was employed to take care of a horse and cart, and who had no right to go home to dinner or leave the horse and cart, took them to his house and left them outside whilst he was having his dinner; the horse ran away and damaged the plaintiff's railings. A verdict having resulted in favor of plaintiff, a motion for new trial was argued before the justices. The chief justice, in sustaining the verdict, said: "With respect to the first point, the jury have found that the servant was acting in his employment, and I think there was sufficient evidence to warrant them in so doing. . . . Here the servant was employed in taking care of the horse and cart, and was engaged in taking care of them when the mischief arose."

In *Sleath* v. *Wilson,* 9 Car. & P. 607, the defendant contended that at the time of the accident the horse and carriage were being improperly used by the servant for purposes of his own, and that he was at the time not acting within the scope of his employment. The court held otherwise, and Mr. Justice Erskine said: "It is quite clear that if a servant without his master's knowledge takes his master's carriage out of the coach-house, and with it commits an injury, the master is not answerable; and on this ground, that the master has not intrusted the servant with the carriage. But whenever the master has intrusted the servant with the control of the carriage, it is no answer that the servant acted improperly in the management of it. If it were it might be contended that if a master directs his servant to drive slowly, and the servant disobeys his orders and drives fast, and through his negligence occasions an injury, the master will not be liable. But that is not the law; the master in such case will be liable, and the ground is that he has put it in the servant's power to mismanage the carriage by intrusting him with it."

In *Noblesville etc. Co.* v. *Gause,* 76 Ind. 142, [40 Am. Rep. 224], the defendant contended that it was not responsible for the negligent act of the toll-gate keeper in letting down the beam of the gate after 9 o'clock P. M., because his hours of employment were from 5 o'clock A. M. until 9 o'clock P. M. The court held otherwise, and in the opinion said: "There was, however, uncontradicted evidence showing that the gate-keeper was in sole charge of the toll-house and gate at all times, and that he was the only agent or officer of the corporation who had control of that property. . . . It is very apparent in this case that the servant's duty did not terminate with gathering each day's toll, but that it extended to the control of the gate and its appliances, and if, while managing them for the master, he negligently inflicted an injury upon a traveler, who was free from fault, the rule of *respondeat superior* must prevail."

In speaking of the liability of a defendant for the negligence of a driver while engaged in carrying a load of poles for himself the court said in *Mulvehill* v. *Bates,* 31 Minn. 364, [49 Am. Rep. 796, 17 N. W. 959] : *"But here the wagon was intrusted, generally, to the driver, to be used entirely at his discretion."*

In *Rahn* v. *Singer Mfg. Co.,* 26 Fed. 913, the court said: "In order to fix the responsibility of the defendant, it is not necessary for the plaintiff to prove that the servant, for whose tort he seeks damages, was at the time of the commission of the tort, engaged in executing specific commands of the defendant. It is enough for him to prove that the servant was acting within the general scope of his employment, but this much is necessary. If the usage of the parties, under the servant's contract of hiring, was of such a character that it allowed the servant to attend to his duties on such terms as suited his convenience, and at the time of the commission of the tort he was engaged in his own private business, but at the same time was pursuing the defendant's business in the service for which he was employed, the defendant would still be liable."

In the case at bar Fagan was taking his noon hour for rest and refreshment, but at the same time he was pursuing the

line of his duty and the defendant's business in caring for and feeding the horse.

The order is reversed.

Hall, J., and Harrison, P. J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on February 25, 1907.