[Civ. No. 3638. First Appellate District, Division One.—January 6, 1921.]

## JOHN H. KLEIST et al., Appellants, v. B. E. PRIEM et al., Respondents.

[1] FRAUDULENT REPRESENTATIONS—EXCHANGE OF REAL PROPERTIES—ACTION FOR DAMAGES—VALUES—EVIDENCE.—In this action for damages alleged to have been sustained as the result of an exchange of real properties by and between plaintiffs and defendants, induced by false and fraudulent representations as to the value of the properties received by the plaintiffs, it was error to sustain the defendants' objections to plaintiffs' offers to prove that the value of the properties received by the plaintiffs had been grossly represented by the defendants and that the aggregate value thereof was inequitable as compared with the property received by the defendants.

[2] ID.—NATURE OF STATEMENTS AS TO VALUES—QUESTION FOR JURY.—Whether statements as to values are tantamount to an affirmation of an existing fact rather than a mere expression of opinion and were the inducing cause of entering into a contract of exchange are questions of fact for the determination of the court or jury.

[3] ID.—MISREPRESENTATION AS TO IMPROVEMENTS—EFFECT ON VALUE—DAMAGE.—The fact that certain city lots do not possess all the improvements as represented very substantially affects their value, and this constitutes an element of damage.

[4] NONSUIT—SUFFICIENCY OF EVIDENCE.—A motion for nonsuit must be denied if there is any substantial evidence tending to prove plaintiff's case without passing on the sufficiency of such evidence.

[5] FRAUDULENT REPRESENTATIONS—REDUCTION OF CONTRACT TO WRITING—PRIOR STATEMENTS—PAROL EVIDENCE.—The fact that an agreement for an exchange of real properties has been reduced to writing does not prevent the admission of parol testimony to establish the fact that such writing was procured by fraud and that the transfer of properties was made because of fraudulent representations.

[6] NONSUIT—EVIDENCE—INFERENCES—PRESUMPTIONS.—In determining whether or not the evidence is sufficient to require the submission of a case to the jury, every favorable inference fairly deducible and every favorable presumption fairly arising from the evidence produced must be considered as facts proved in favor of the plaintiff.

[7] ID.—EVIDENCE SUSCEPTIBLE OF DIFFERENT CONSTRUCTIONS—CONTRADICTORY EVIDENCE.—Where evidence is fairly susceptible of two constructions, or if one of several inferences may reasonably be made, the court, on a motion for nonsuit, must take the view most favorable to the plaintiff; and if contradictory evidence has been given, it must be disregarded.

[8] ID.—CONSTRUCTION OF EVIDENCE IN FAVOR OF PLAINTIFF.—On a motion for nonsuit, the plaintiff must be given the benefit of every piece of evidence which tends to sustain his averments, and such evidence must be viewed in the light most favorable to plaintiff's claim.

[9] ID.—CONSIDERATION OF EVIDENCE ERRONEOUSLY ADMITTED.—On a motion for nonsuit, evidence, whether erroneously admitted or not, if relevant to the issues joined, must be given the benefit of its full probative strength, and any question arising from the fact of variation between the evidence of witnesses cannot be raised or considered.

[10] ID.—PRIMA FACIE CASE—DENIAL OF MOTION.—On a motion for nonsuit, the evidence must be taken most strongly against the defendant, and if the plaintiff has introduced proof sufficient to make out a *prima facie* case under the allegations of his complaint, the motion, if made on the close of his case, should be denied.

[11] FRAUDULENT REPRESENTATIONS—ACTION FOR DAMAGES—PLEADING—ISSUES.—In an action for damages alleged to have been sustained as the result of an exchange of real properties by and between the plaintiffs and defendants, induced by false and fraudulent representations as to the value of the properties received by plaintiffs, proper elements of damage not pleaded cannot be made issues at the trial.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. Bernard J. Flood, Judge. Reversed.

The facts are stated in the opinion of the court.

Marcus D. Wolff and A. Walter Allen for Appellants.

Olin L. Berry for Respondents.

51 Cal. App.—3

SEAWELL, P. J., *pro tem.*—Plaintiffs, husband and wife, brought this action against defendants, husband and wife, to recover damages alleged to have been sustained by the former in the sum of $11,360 as the result of an exchange of real properties by and between said parties induced by false and fraudulent representations made by defendant B. E. Priem, acting for himself and his said wife. The wives of the parties were made parties solely because of respective marital relations. This being so, reference will be made only to the principals.

The property parted with by plaintiff is situated in Douglas County, Oregon, and will be referred to as the Oregon property, while the property received by him from defendant, consisting of several lots, parcels, and tracts of land situate in the counties of San Francisco, Alameda, San Mateo, Contra Costa, and Napa, in this state, will be referred to as the California properties.

The gravamen of the action is to be found in the allegations of the amended complaint charging false and fraudulent representations made by defendant as to the values of the several lots or tracts of the California properties, the state of improvements thereon and subsisting liens standing against the same.

Defendant denied specifically all of the material allegations of the amended complaint and, in turn, by cross-complaint, charged plaintiff with falsely and fraudulently misrepresenting the value of the Oregon property to his damage in the sum of $11,000. At the close of plaintiff's case the court granted defendant's motion for nonsuit, and judgment was accordingly entered. Plaintiff appealed from said judgment and from an order denying his motion for a new trial.

A statement of the facts essential for an understanding of the orders appealed from, and the court's decision, may be thus briefly made: Plaintiff was at the time of said exchange and for several years prior thereto had been a resident and owner of farm and orchard lands situate eight miles from the nearest town or village in Douglas County, Oregon, and engaged in conducting the same. His property consisted of seventy-five acres, fifty of which were planted to bearing fruit trees. The remaining twenty-five acres were used chiefly for growing grains. The improvements and equipment were modern and fully ample for the purposes

to which the land was devoted. The uncontradicted evidence is that the Oregon property, on the day of the exchange, was of the value of $18,000, but carried an encumbrance of $1,500.

Plaintiff and his wife had grown anxious to become residents of California, preferably San Francisco. It seems that the husband had fallen into conversation with one E. J. Sanford, "a neighbor," whom he describes as having known for a period of about one week. Sanford, having thus been made aware of plaintiff's desires, represented that he was a real estate operator of thirty-five years' activity and volunteered to go to San Francisco and obtain for him a "good trade." This occurred during the latter days of September, 1917. Plaintiff furnished Sanford with a list of his property, together with photographic views, and the latter very shortly thereafter arrived in San Francisco and very promptly wrote to plaintiff that he had procured a good trade and advised him to make the exchange. The evidence indicated that upon arriving in San Francisco Sanford went direct to the offices of defendant B. E. Priem, who then had offices in the Phelan building. Whether a prior acquaintance existed between the two does not appear.

On October 1, 1917, Sanford wrote a letter to plaintiff from San Francisco in which he inclosed a list of properties made out and offered by defendant Priem in exchange for his Oregon property. The list described in a general way several lots or "tracts" of land.

Closely following the Sanford letter, defendant Priem forwarded a second list to plaintiff. Sanford hurried back to Oregon and advised plaintiff to make the trade. At this juncture Sanford withdrew from the transaction as mysteriously as he had entered it. Plaintiff at once came to San Francisco. It was his first trip to this state and, consequently, he was a stranger. He went to Priem's office, was entertained by him, and received his close personal attention throughout his stay. He seems to have had no independent advice or to have conversed or advised with anyone but defendant. He was hurriedly shown the several pieces of property afterward passed to him by the exchange, except the Napa City and Matthews lots, which he did not see. His visit to or examination of any one of said lots or tracts of land did not exceed five minutes and in some in-

stances not more than one minute. The properties were quite widely separated, being in four counties. At the expiration of the third day of his visit plaintiff informed defendant that he had concluded not to make an exchange of properties and announced his intention of starting for his home. Defendant insisted on accompanying him, and did accompany him, to Oregon, stating that he wanted to see his "ranch anyway," and also the country. After three or four days of negotiations at the Oregon ranch, defendant revised his property list by adding two Berkeley lots, and represented by positive statements that the properties listed, exclusive of said two Berkeley lots, were worth $18,000, and that said two lots were worth $2,500, less an $800 mortgage. This was sufficient to induce plaintiff, who had been theretofore in an uncertain frame of mind, to execute, on October 23, 1917, the contract of exchange. An exchange of deeds soon followed, both sides executing warranty deeds.

[1] It is an allegation of the amended complaint, and was the offer of plaintiff at the trial, to show by competent testimony, that the value of the California properties had been grossly misrepresented by defendant and that the aggregate value thereof was inequitable as compared with his Oregon property. The aggregate value of the California properties as represented by defendant, after balancing encumbrances and liens, had been so adjusted by the second list, exclusive of the Berkeley lots afterward included, as to make them appear to equal the actual value of plaintiff's Oregon property. At the trial plaintiff offered to show by numerous witnesses that the actual or market value of each lot, piece, or parcel of the California properties was at least fifty per cent below its represented value. Defendant objected to any and all offers to prove values, and the court sustained each of his objections. This ruling was erroneous. The only evidence as to the value of the California properties permitted by the court was brought out on the cross-examination of the plaintiff.

Upon what theory evidence of this character was excluded under the issues as framed does not clearly appear. Possibly it was excluded on the theory that plaintiff had full or equal opportunity with defendant to investigate for himself or that the representations as made were mere expressions of opinion rather than the affirmation of facts. Under

the facts and circumstances as disclosed by the record of the case, these questions were matters of fact to be determined by the jury and not mere questions of law for decision by the court. The cross-examination of plaintiff on the subject of values seems to have been made on the theory that it afforded an opportunity of impeachment by a comparison of the allegations of the original complaint with the allegations of the amended complaint. Whatever the purpose may have been, the evidence was elicited, and under the rules governing motions for nonsuits it must be given its full probative effect. The cross-examination showed the actual values to be far below the values as represented.

It was the evidence that plaintiff had been a farmer practically the whole of his life, had had no previous real estate knowledge or business training and was wholly ignorant of California conditions and values, and therefore relied solely upon defendant's statements of values. In fact, he had never seen the Napa City property. Defendant, on the other hand, was the owner of lands situate in several counties of the state, occupying a business office, and, doubtless, was well informed as to realty values. A fair inference from the facts stated would be that he was a real estate broker. His assertion, rather boastfully, was that he did not need an attorney to transact business for him.

[2] Whether statements as to values are tantamount to an affirmation of an existing fact rather than a mere expression of opinion and were the inducing cause of entering into a contract of exchange are questions of fact for the determination of the court or jury. (*Herdan* v. *Hanson,* 182 Cal. 538, [189 Pac. 440].) "Evidence as to the value of lands exchanged at the time of the exchange is admissible and relevant to an issue of fraud connected with the exchange and also as a circumstance to be considered in construing the contract." (*Beverly* v. *Blackwood,* 102 Cal. 83, [36 Pac. 378]; *Bonnarjee* v. *Pike,* 43 Cal. App. 502, [185 Pac. 479].) Surely, the representation that the Napa City property, property situate in a county he had never visited and about which he had no knowledge, possessed certain valuable sidewalk, curb, sewer, and street improvements and was of a value greatly in excess of its actual value, standing in the face of uncontradicted testimony that it did not

possess said improvements and was far below its represented value, brings this case within the rule above announced.

It was while in Oregon, several hundreds of miles removed from the *situs* of the California properties, that plaintiff was induced to make the exchange. Whether plaintiff, judged from the circumstances of the situation, had reasonable means of investigating the question of values for himself and whether he relied upon the statements of value made by · defendant, were questions of fact that should have been submitted to the jury. There was no such acquaintance with, examination, or tests made by plaintiff of the properties received in exchange as is found in the cases cited by defendant. [3] There was direct evidence that the Napa City lots did not possess anything like all the street improvements as represented. This would very substantially affect value. It constituted an element of damage. There was evidence, perhaps not as definite or satisfactory as was obtainable or desirable, touching the cost of making the improvements agree with the representations set out in the contract of exchange.

[4] But a motion for nonsuit must be denied if there is any substantial evidence tending to prove plaintiff's case without passing on the sufficiency of such evidence. (*Grummet* v. *Fresno Glazed Cement Pipe Co.,* 181 Cal. 509, [185 Pac. 388].)

It appears that the Burlingame property, which was warranted to be "free and clear of all encumbrances," was subject to a lien for street improvement work in the sum of $110, which had not been wholly paid at the day of the trial. The Behrens tract was warranted by the agreement of exchange to be "free and clear of all encumbrances." It subsequently developed that Mrs. J. M. Hamill held a contract for the purchase of said tract. As a part of the original agreement, defendant covenanted to clear the title either by obtaining a quitclaim deed from Mrs. Hamill or by the institution of an action to quiet title thereto. Neither was done. As an answer to plaintiff's complaint for failure to comply with said covenant defendant at the trial of the case presented to plaintiff for the first time a quitclaim deed executed by Mrs. Hamill long after suit had been commenced asking damages be-

cause of such failure. Surely, defendant should not be permitted to profit by such methods.

The Cortland Avenue lot, the most valuable of the listed properties, was shown to be materially less in area than it was represented to be. It was described as "seventy-five feet on Cortland Avenue." Its full dimensions were at no time given, not even in the deed. As a matter of fact, it was of "flat-iron" shape, seventy-five feet on Cortland Avenue, and tapered down to a width of forty-seven feet at the rear. It was the testimony of plaintiff that this lot was represented to be seventy-five by seventy feet. Strange as it may appear, the complaint contains no allegation of damage because of such misrepresentation. The dimensions of the lot were admissable, however, as affecting value. The treatment of this lot throughout the transaction, whenever reference was made to it, was such as to leave room for an unwary person to be misled as to its actual size.

[5] There is no merit in defendant's contention that because the agreement of exchange had been reduced to writing no evidence concerning false representations should have been received with respect to any statement made prior to its execution. No attempt is here made to vary the terms of a written contract nor to explain away an ambiguity. Its purpose was to establish the fact that the instrument was procured by fraud and the transfer of properties was made because of fraudulent representations as alleged in the complaint. Parol evidence has always been held to be admissible to establish fraud. Persons contemplating fraud may not be expected to reduce their fraudulent purposes to writing. To exclude parol evidence in such cases would bar inquiry into many fraudulent transactions. Such a rule would afford a fortress of protection to those contemplating fraudulent schemes. The decisions decisive of this question are: *Zirbes* v. *Mounsey*, 176 Cal. 677, [169 Pac. 368]; *Ayers* v. *Southern Pac. R. Co.*, 173 Cal. 75, [L. R. A. 1917F, 949, 159 Pac. 144]; *Isenhoot* v. *Chamberlain*, 59 Cal. 630; *Bechtold* v. *Coney*, 42 Cal. App. 563, [183 Pac. 841]; *Troy etc. Co.* v. *Drivers etc. Co.*, 14 Cal. App. 152, [111 Pac. 121].

The case of *Harding* v. *Robinson*, 175 Cal. 534, [166 Pac. 808], relied upon by defendant, is not in conflict with

the rule that has always obtained in this state. It simply reaffirms the familiar rule that the terms of a written contract cannot be varied by parol evidence. By an agreement in writing, as stated in said case, the vendor sold a tract of land by metes and bounds with no reference to acreage. Inasmuch as the contract described it as a sale in gross, parol evidence was not admissible to show that false representations were made as to its acreage. This principle of law has no application to the instant case. No attempt is made to vary the terms of a written agreement. The inquiry here is as to the means employed in procuring the execution of an instrument faultless on its face.

Not only the two lists sent to plaintiff from San Francisco, the second of which contained a brief description of each separate parcel of land offered and containing the words, "My price" (naming a stated sum), or statements as to its cost to defendant, or amounts expended by him for improvements, or prices which near-by lots had brought, were admissible in evidence, but also the oral representations made to plaintiff in Oregon to the effect that the property offered by him was of the value of $18,000. The acts and conduct of the parties are also important.

[6] In determining whether or not the evidence is sufficient to require the submission of a case to a jury, every favorable inference fairly deducible and every favorable presumption fairly arising from the evidence produced must be considered as facts proved in favor of the plaintiff. [7] Where evidence is fairly susceptible of two constructions, or if one of several inferences may reasonably be made, the court must take the view most favorable to the plaintiff. If contradictory evidence has been given, it must be disregarded. (*Estate of Arnold,* 147 Cal. 583, [82 Pac. 252].) [8] The plaintiff must also be given the benefit of every piece of evidence which tends to sustain his averments, and such evidence must be viewed in the light most favorable to plaintiff's claim. (*Anderson* v. *Wickliffe,* 178 Cal. 120, [172 Pac. 381].) [9] Evidence, whether erroneously admitted or not, if relevant to the issues joined, must be given by the court the benefit of its full probative strength, and any question arising

from the fact of variation between the evidence of the witnesses cannot be raised or considered. **[10]** The evidence must be taken most strongly against the defendant, and if the plaintiff has introduced proof sufficient to make out a *prima facie* case under the allegations of his complaint, the motion, if made on the close of his case, should be denied. (*Bush* v. *Wood,* 8 Cal. App. 647, [97 Pac. 709]; *In re Estate of Daly,* 15 Cal. App. 329, [114 Pac. 787]; *Wassermann* v. *Sloss,* 117 Cal. 425, [59 Am. St. Rep. 209, 38 L. R. A. 176, 49 Pac. 566]; *Lassen* v. *Southern Pac. Co.,* 173 Cal. 71, [159 Pac. 143].)

Applying the foregoing rules to the evidence, we think the judgment of nonsuit was erroneous. It was also error to exclude evidence as to the values of the properties passed by the deeds of exchange. The discussion of the evidence in this decision must be considered solely in reference to a motion for nonsuit.

In conclusion, it may be stated that the amended complaint is faulty both in substance and in form. The allegations as to value are weak and indirect, and those in reference to damages are somewhat vague and incomplete. **[11]** Proper elements of damage not pleaded were attempted to be made issues at the trial. This cannot be done, and while these matters were not properly presentable upon motion for nonsuit, they are such as should be corrected upon a retrial of the case.

The judgment and order appealed from are reversed.

Richards, J., and Kerrigan, J., concurred.