[L. A. No. 6350. Department Two.—January 24, 1921.]

FRANK J. RUNKLE, Respondent, v. SOUTHERN PACIFIC MILLING COMPANY (a Corporation), Appellant.

[1] Negligence—When Question of Law.—It is only when the facts of a given case are not in any event or in any view of the case susceptible to the inference of negligence sought to be deduced therefrom that the question of negligence becomes one of law for the sole consideration of the court rather than one of fact for the determination of the jury.

[2] Warehouseman — Safeguarding of Stored Goods — Degree of Care.—In view of section 20 of the Warehouse Receipts Act

(Stats. 1909, p. 437), the duty devolves upon a warehouseman to exercise such care in the safeguarding of stored property as a reasonably careful owner of similar goods would exercise.

[3] ID.—ACTION FOR LOSS OF STORED GOODS—ADEQUACY OF FIRE-FIGHTING APPLIANCES—QUESTION FOR JURY.—In an action against a warehouseman for the destruction of stored goods by fire, the question whether the fire-fighting appliances provided by the defendant for the protection and preservation of the warehouse and its contents were ordinarily adequate and reasonably sufficient as a protection against loss and damage by fire, under all the circumstances, was a question of fact for the jury to determine.

[4] ID.—KNOWLEDGE OF MANNER OF CONDUCT OF WAREHOUSE BUSINESS—ASSERTION OF LIABILITY—LACK OF ESTOPPEL.—The liability of a warehouseman as a bailee for hire for the destruction of stored goods by fire is not lessened and the owner of the goods is not estopped from asserting such liability merely because the owner may have had knowledge as to the manner in which the warehouseman conducted its business at the time the goods were stored.

[5] ID.—ACTION FOR DESTROYED GOODS—NEGLIGENCE OF INTOXICATED EMPLOYEE—LIABILITY OF WAREHOUSEMAN—EVIDENCE.—In an action against a warehouseman for loss of stored goods in a fire claimed to have been caused by an intoxicated employee, proof that the employee at the time of the fire was in the warehouse within the general scope of his employment and that the injury resulted from his negligence is all that need be shown to charge the defendant with liability for the damage.

[6] ID.—SELECTION OF EMPLOYEE ADDICTED TO DRINKING HABIT—INSTRUCTION.—Where in such action it was shown that the agents of the defendant had knowledge that the employee whose negligence caused the fire drank intoxicating liquors to excess and was in the habit of getting drunk, an instruction was warranted to the effect that an ordinarily prudent employer would not retain in its employ a man who was known, or who should have been known, to be an habitual drunkard.

[7] ID.—CARE IN MANAGEMENT OF WAREHOUSE—BURDEN OF PROOF.—In such action, while it was incumbent upon the plaintiff to sustain the burden of showing defendant's negligence, it was not necessary to the plaintiff's case to show affirmatively what would constitute ordinary care on the part of the defendant in the

3. Liability of warehouseman for loss of goods by fire, notes, 19 Ann. Cas. 243; Ann. Cas. 1914A, 1123.

7. Presumption and burden of proof as to care or negligence in respect to subject of bailment, notes, 1 Ann. Cas. 23; 21 Ann. Cas. 842; 43 L. R. A. (N. S.) 1168; where subject of bailment is destroyed or damaged by fire, note, 9 A. L. R. 559.

operation and management of its warehouse, the same being a matter of defense, and, in the absence of a showing in that behalf, it was within the province of the jury to determine from all the evidence whether the defendant was negligent in the management of its business, or conducted it with the care and caution which would, considering the character of the business, ordinarily be required of a reasonably prudent person.

APPEAL from a judgment of the Superior Court of Ventura County. Merle J. Rogers, Judge. Affirmed.

The facts are stated in the opinion of the court.

Chas. F. Blackstock for Appellant.

Robert M. Clarke for Respondent.

LENNON, J.—The defendant appeals from a judgment entered upon the verdict of the jury in the sum of $5,652.17 as damages for the destruction by fire, resulting from the defendant's negligence, of a lot of beans which were stored in the warehouse of the defendant at Santa Susanna, in Ventura County. Substantially stated, the pleaded facts of the plaintiff's case, in so far as material to the points presented on appeal, are these: The corporation defendant was doing a general storage business on and prior to the twenty-fifth day of December, 1918, and on that day the plaintiff had stored in the defendant's warehouse certain quantities of beans reasonably worth the sum of $5,675.67. On the date last mentioned, and prior thereto, the defendant failed generally to exercise ordinary and reasonable care and diligence for the protection and preservation against destruction by fire of the plaintiff's beans, which had been deposited and stored in the warehouse of the defendant, and was particularly negligent in failing to provide a watchman or caretaker of its said warehouse other than one Roy Thomas, "who was at all times careless, negligent, reckless, and unfit to have charge of said public warehouse" and its contents, and on the said twenty-fifth day of December, 1918, said Thomas, then and there, being the servant of said defendant, entered the warehouse of the defendant in an intoxicated condition and negligently set fire thereto, causing the warehouse and its contents, including the plaintiff's beans, to be destroyed.

The jury's finding of negligence, implied from the verdict, is sufficiently supported by evidence. [1] It is idle to discuss upon appeal to this court the weight of the evidence upon which the judgment rests, and, of course, it is only when the facts of a given case are not in any event or in any view of the case susceptible to the inference of negligence sought to be deduced therefrom that the question of negligence becomes one of law for the sole consideration of the court rather than one of fact for the determination of the jury. [2] It is conceded, as indeed it must be, that by reason of the relationship of the parties arising out of the contract of bailment for hire and the provisions of section 20 of the Warehouse Receipts Act (Stats. 1909, p. 437), that the duty devolved upon the defendant to exercise such care in the safeguarding of the plaintiff's property as a reasonably careful owner of similar goods would exercise, and, failing in this, the defendant must be held in damages for the resultant loss. The evidence in the instant case shows, in response to the issue of negligence, substantially as follows: The defendant's warehouse was a wooden structure, two hundred feet long and 74 feet wide, in which, in addition to general merchandise, gasoline and other inflammable and explosive substances were stored. Two barrels of water, without buckets at hand, were located at either end of the building, and these, with two small pyrene fire-extinguishers and a three-quarter inch low-pressure water-pipe leading from a neighbor's well and terminating with a faucet in a sink inside the warehouse, constituted the fire-fighting appliances provided by the defendant for the protection and preservation of the warehouse and its contents. [3] Whether these fire-fighting appliances were ordinarily adequate and reasonably sufficient as a protection against loss and damage by fire under all of the circumstances, and considering particularly the situation of the warehouse, was clearly a question of fact for the jury to determine. [4] The liability of the defendant as a bailee for hire was not lessened and the plaintiff was not estopped from asserting such liability merely because the plaintiff may have had knowledge as to the manner in which the defendant conducted its business at the time plaintiff stored his beans with the defendant. (*Stevens* v. *Stewart-Warner Corp.,* 223 Mass. 44, [111 N. E. 771].)

Upon the question of the particular negligence of the defendant in employing an unfit man to have charge of its warehouse, the record shows some evidence to the effect that the defendant, prior to and at the time of the fire, employed as a warehouseman one Roy Thomas, a person who was addicted to the use of intoxicating liquor and who got drunk to the knowledge of the agents of the defendant. Upon the latter phase of the case there was evidence to the effect that the agents of the defendant knew the failing of this man when they employed him. There is further evidence to show not only that this man was especially employed as the warehouseman but had in fact acted in his capacity of warehouseman, and that he was at times in complete charge of the warehouse and at all times had the key to the warehouse, although there was another person over him who was known as the ''agent for the warehouse,'' who was agent at Santa Susanna and Moorpark and who was generally in charge of those warehouses, but he resided at Moorpark, some ten miles from Santa Susanna, and only occasionally visited the warehouse there. Another employee, a Mrs. Haigh, the bookkeeper, lived on a ranch about one and a quarter miles from the warehouse. Thomas was the only person residing usually in Santa Susanna who was in authority in the warehouse, and when the warehouse was open for business Thomas ''seemed to be boss there. He wasn't doing anything but standing around and giving orders.''

It is an undisputed fact in the case that Thomas was intoxicated to the point of irresponsibility on the night of the fire, and that, prior to the discovery of the fire, he was seen, still intoxicated, going toward the warehouse, and while it was not shown by any direct evidence that he was in the warehouse until after the fire started, nevertheless, within the evidence adduced upon the whole case, there are to be found circumstances which unerringly point to the conclusion and justified the jury in finding that he was not only in the office of the warehouse where the fire originated and at the time it originated, but that he, while in a drunken stupor, was the cause of the fire. That Thomas was acting within the scope of his employment on the day and the evening of the fire, notwithstanding the fact that the warehouse was not open for business at that time, is fairly infer-

able from the evidence as a whole and in particular from that evidence which tended to show that Thomas was employed as "a warehouseman . . . to take charge of the warehouse" and was given a key thereto which he had at all times in his possession. Under these circumstances, we are not prepared to say that the jury was not justified in finding that when Thomas entered the warehouse on the evening of the fire he was acting within the scope of his employment. Thomas was the only agent of the corporation at Santa Susanna who had control of its property at the time of the fire or who could be said to be in charge of the warehouse, and it may well have been found that the duties of Thomas as warehouseman in charge of the warehouse extended beyond the hours ordinarily occupied for the public use of the warehouse, and it was not necessary for the plaintiff to prove that at the time of the fire Thomas was engaged in executing any particular business or specific command of his principal. **[5]** If Thomas at the time of the commission of the act which resulted in the fire was in the warehouse within the general scope of his employment and the injury and damage resulted from his negligence, that is all that need be shown in order to charge the defendant with liability for the damage. (*Mulvehill* v. *Bates*, 31 Minn. 364, [47 Am. Rep. 796, 17 N. W. 959]; *Rahn* v. *Singer Mfg. Co.*, 26 Fed. 912; *Reardon* v. *Gas Consumers' Assn.*, 4 Cal. App. 639, [88 Pac. 809]; *Jessen* v. *Peterson, Nelson & Co.*, 18 Cal. App. 349, [123 Pac. 219].) But, however that may be, the jury may well have found that the defendant was guilty of actionable negligence in the selection and employment of a man whose duties called for the constant possession of a key to the warehouse, with the consequent right of access thereto at all times, and who to the knowledge of defendant's agents drank intoxicating liquors to excess and who was in the habit of getting drunk. (*Cussen* v. *Southern Cal. Sav. Bank*, 133 Cal. 534, [85 Am. St. Rep. 221, 65 Pac. 1099].) In short, the real question involved in the instant case is not so much one of the scope of Thomas' employment, but rather a question of the negligence of the defendant in the selection of an employee whom it knew was not competent, by reason of his known drinking habits, to be placed in the care and charge of the defendant's warehouse and the property of the plaintiff therein.

[6] No fault can be fairly found with the instruction of the trial court to the effect that an ordinarily prudent employer would not retain in its employ a man who was known, or who should have been known, to be an habitual drunkard. While there is no evidence showing that Thomas was an habitual drunkard in the sense that he got drunk so often and to such an extent as to incapacitate him from attending to his business for a considerable portion of the time, nevertheless, the evidence as a whole shows that Thomas frequently got drunk while employed at Santa Susanna, was drunk when he came there on or about November 20th, was drunk on the occasion of the fire, and was observed to be drunk by the townspeople and under the influence of liquor oftentimes when on duty in and at the warehouse. The habitual drunkenness referred to in the instruction was not used in a technical or limited sense, but in its general sense as distinguished from that habitual intemperance, for instance, which might be made the ground of an action in divorce. An habitual drunkard in the general sense and as commonly understood is one who is addicted to the habit of drinking intoxicating liquors to excess and who is commonly or frequently intoxicated and becomes so as often as an opportunity permits. (*State* v. *Pratt*, 34 Vt. 323.) As used in the instruction complained of, the phrase "habitual drunkard" needed no explanation. The jury, presumably, was competent to understand what is meant by language in common use. And whether the habits and conduct of the man Thomas, as shown by the evidence, were insufficient to stamp him as an habitual drunkard was a question properly submitted to the jury under the allegations of the complaint to the effect that Thomas was incompetent and unfit to have charge of the defendant's warehouse and to care for the plaintiff's property deposited therein. (3 Labatt's Master and Servant, sec. 1087 [185], p. 2875; *Probst* v. *Delamater*, 100 N. Y. 266, 271, [3 N. E. 184].) Fairly construed, the instruction in question did not purport to tell the jury that they might come to a conclusion based upon their own individual opinion, without regard to the evidence, as to what a prudent warehouseman would or would not have done under the circumstances. The most that the instruction can be said to have done was to tell the jury that if the evidence in the case warranted a finding that an ordinarily prudent person would

not employ a known habitual drunkard as a warehouseman, and that if it were further found that the defendant knowingly and imprudently did that very thing, the defendant was guilty of negligence and must respond in damages for the injury and loss proximately resulting to plaintiff as the result of the warehouseman's drunken negligence. So construed, the instruction clearly stated the law. (3 Labatt's Master and Servant, sec. 1087, p. 2875; *Huntington etc. Co. v. Decker,* 84 Pa. St. 419–424.) **[7]** While it was incumbent upon the plaintiff to sustain the burden of showing defendant's negligence, it was not necessary to the plaintiff's case to show affirmatively what would constitute ordinary care on the part of the defendant in the operation and management of its warehouse. That was a matter of defense, and in the absence of a showing in that behalf by the defendant it was within the province of the jury to determine from all of the evidence whether the defendant was negligent in the management of its business or conducted it with the care and caution which would, considering the character of the business, ordinarily be required of a reasonably prudent person.

The judgment is affirmed.

Wilbur, J., and Sloane, J., concurred.