[Civ. No. 4039. Third Appellate District.—October 20, 1930.]

RIZIERI BARTY, Appellant, v. JOSEPH F. COLLINS et al., Respondents.

Sinclair M. Dobbins and Huston, Huston & Huston for Appellant.

Hadsel, Sweet & Ingalls and Joseph M. Raines, for Respondents.

TUTTLE, J., Pro Tem., Delivered the Opinion of the Court.—This is an action to recover damages alleged to have been suffered by plaintiff on account of personal injuries received in an automobile collision. The jury returned a verdict against defendant Collins in the sum of $15,000. Upon motion of defendant corporation, the court directed a verdict in its favor, and from the verdict so rendered plaintiff prosecutes this appeal.

On the evening of July 11, 1928, defendant Collins, while in the general employment of defendant corporation, was

driving his own automobile along the state highway, near the city of Fairfield, when a collision occurred between his car and the car driven by plaintiff. The injuries complained of arose out of this collision.

The motion for a directed verdict was granted upon the sole ground that there was no proof that Collins was acting within the scope of his employment at the time of the collision, and this is the only question presented upon this appeal.

■ In reviewing an order directing a verdict the appellate court will apply rules analogous to those which govern in reviewing an order granting a nonsuit. (24 Cal. Jur., p. 913.) Accordingly, it is the duty of the court here to view the evidence adduced in support of plaintiff's case, and every presumption and inference that may be fairly deduced therefrom, in the light most favorable to plaintiff. (*McKay* v. *McKay,* 184 Cal. 742 [195 Pac. 385].) ■ Furthermore, evidence, whether admitted erroneously or not, if relevant to the issues joined, must be given by the court the benefit of full probative strength, and any question arising from the fact of variation between the evidence of the witnesses cannot be raised or considered. (*Kleist* v. *Priem,* 51 Cal. App. 32, [196 Pac. 72].) "The question of the liability of the master for the acts of his servant depends altogether upon the fact of whether or not the servant was acting within the scope of his employment. The terms 'course of employment' and 'scope of authority' are not susceptible of accurate definition. What acts are within the scope of employment can be determined by no fixed rule, the authority from the master being gathered from surrounding circumstances." (*Robards* v. *Bannon Sewer Pipe Co.,* 130 Ky. 380 [132 Am. St. Rep. 394, 18 L. R. A. (N. S.) 923, 113 S. W. 429].) ■ Whether the act of the servant complained of is within the scope of his duty, while acting in the furtherance of his master's business, is a matter of fact to be determined by the jury, and not by the court as a matter of law.

The record presents the following evidence upon the question of whether or not Collins was acting within the scope of his duty when the accident occurred: During the trial it was admitted by counsel for Collins "that at the time of his (Collins') vacation and of this accident he was

an employee of the Company on vacation with pay''. Collins, called as an adverse witness by plaintiff, testified that at the time of the collision he was on his way from San Francisco to Sacramento, for the sole purpose of calling upon a man named Chambers; that at that time he was regularly employed as a salesman and installment man for defendant corporation, and had been so employed for a number of years; that he sold and installed linotyping machines for the company; that Chambers used machines similar to those sold by defendant corporation, and that he had called upon Chambers a number of times pursuant to his duties and prior to the date of the accident for the purpose of selling a machine for his employer; that some time prior to the accident one of the men (presumably an employee of defendant corporation) had sold a machine to Bird Linotyping Company of Los Angeles; that he had learned from the reports that the Bird Company was dissatisfied with the machine sold them, and that they wanted to dispose of it; that he was on his way to Sacramento to attempt to sell this machine to Chambers, when the collision occurred.

We are only here concerned with evidence favorable to plaintiff. It is true that Collins testified that at the time of the collision he was on his vacation. His testimony upon the matter of the exact time when his vacation commenced is vague and uncertain, and might well have been entirely left out of consideration by the jury. He testified that his wife and child were at Seattle, and that his vacation had started, and he was on his way to meet them. If this is true, the jury might well have inquired why he did not go directly to Seattle, instead of proceeding out of his route to Sacramento. They might reasonably have inferred that he did not intend to start on his vacation until after he had consummated his business call with Chambers. Furthermore, during the trial, no attempt was made by the corporation to show by their records or by the testimony of executive officials that Collins was actually on his vacation or the exact date when it began. At the trial there was testimony to the effect that Collins had admitted to the witness in San Francisco that his vacation did not commence until July 15th, three days after the accident.

It is earnestly contended by respondent that the evidence with reference to the sale of the machine to Chambers is

susceptible of one construction only, to wit, that the matter was the private business of Collins, and that the respondent company was in no way interested therein. We believe that this view of the testimony cannot be sustained. According to the evidence, this machine had been sold by respondent company to a customer in Los Angeles, who became dissatisfied. From the "records" Collins found it was to be resold, and he was proceeding to sell it again. Asked where he got the information, Collins answered in a manner which did not carry conviction, and the jury might well have inferred that the "records" referred to were the records of the corporation. Again, Chambers was an old "prospect" of his company, and the jury could reasonably have found that the business he had with Chambers at Sacramento was respondent's business. The following question and answer put to and made by Collins are indicative of his manner of testifying: "You had planned to stop at Sacramento to see someone there about some business selling typograph machine you told me? A. It was really not business, it was more of a personal call." Conceding that the proposed visit to Chambers was a personal call, it is a matter of common knowledge that salesmen accomplish and carry out their employment through "personal calls". This is particularly true of the instant case, as Collins had made a number of prior calls upon Chambers, in an attempt to sell him the machine which his employers had for sale, and which he was employed to dispose of. The jury might well have found that Collins' contemplated visit to Sacramento had two objectives—personal business of his own, and business of the company. Under such facts respondent would still be liable. "The mere mingling by the servant of some purpose of his own with that of the master will not relieve the master of liability." (1 Shearman & Redfield on Negligence, sec. 147a.)

We think the jury might have found, not unreasonably, if they believed all the testimony adduced by plaintiff and adopted the inferences properly to be drawn therefrom, that at the time of the collision Collins was engaged in the course of his employment with defendant corporation. We cannot say that a conclusion favorable to a recovery by plaintiff could not have been reached reasonably.

The trial court erred in granting the motion complained of, and, accordingly, it is ordered that the judgment be reversed.

A petition for a rehearing of this cause was denied by the District Court of Appeal on November 19, 1930, and a petition by respondents to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on December 18, 1930.