[Civ. No. 5581. Third Appellate District.—December 4, 1936.]

H. HIROSHIMA, Respondent, v. PACIFIC GAS & ELECTRIC COMPANY (a Corporation), Appellant.

Clinton F. Stanley, Thomas J. Straub, W. H. Spaulding and W. H. Hatfield for Appellant.

Robert H. Schwab and Walter Tsukamoto for Respondent.

PLUMMER, J.—This cause is before us upon an appeal by the defendant from a judgment entered against it based upon an assault upon the plaintiff made by an employee of the defendant named J. V. Downs.

The record shows that on or about the 9th day of July, 1934, J. V. Downs, an employee of the defendant, went to a certain ranch property operated by the Walsh Station Orchard Company, of which the plaintiff was the manager; that the purpose of Downs going to said orchard company's place of business was either to disconnect a power-line maintained by the defendant, furnishing power to a pumping-plant belonging to the orchard company, or to collect the amount of certain bills owing by the orchard company to the defendant for power previously furnished. The purpose of the employee of the defendant visiting the orchard company's property, and the authority under which he acted, is set forth in the complaint as follows, to wit:

"That J. V. Downs was employed by defendant during all of the times herein mentioned, among other things, to collect accounts payable to defendant for electric power supplied, and to issue receipts for the payment thereof, and to disconnect power-lines through which defendant furnished power to such consumer for nonpayment of power bills. That prior to the 9th day of July, 1934, said Walsh Station Orchard Company became indebted to the defendant herein for electric power consumed by it; that on the 9th day of July, 1934, said defendant ordered and directed said Downs to disconnect the power-line through which said electric power was furnished to said Walsh Station Orchard Company, or to collect said indebtedness and issue a receipt for the payment thereof."

This portion of the complaint is undenied, and therefore any argument to the contrary which appears in the briefs must be disregarded.

The record shows that prior to the assault upon which this action is based, the Walsh Station Orchard Company, whose

properties are situate a short distance from the city of Sacramento, in the county of Sacramento, had become indebted to the appellant for electric power supplied by the appellant for use on the property operated by the orchard company. The respondent in this action was at the times mentioned, the manager of the orchard company's properties. As shown by the complaint, and which is undenied in the answer, Downs was employed by the appellant for the purpose of collecting accounts and disconnecting power-lines if accounts were not paid. On or about the 9th of July, 1934, the appellant instructed Downs to disconnect the power-line conveying power to said orchard company unless its bills were paid. Downs thereupon proceeded to the premises belonging to the orchard company, and after checking the meter number, climbed a certain power-pole and disconnected the power-line.

It is shown that the respondent appeared on the highway opposite the power-pole and asked Downs what he was doing. Downs replied that he had disconnected the power-line for nonpayment of bills. Respondent informed Downs that he had a check to pay the bill, and requested Downs to reconnect the power-line. This Downs did, and then started down the pole. It appears that the plaintiff asked Downs why he had not notified the respondent prior to disconnecting the line. Downs stated that he had been out there three or four times to make the collection and had seen the respondent but was never able to collect the money. To this statement the respondent appears to have replied that Downs had never seen him, and that Downs was "talking a lie". The discussion between the two from that time on became somewhat heated, Downs descending the pole, and the respondent handing Downs a check for the amount of the bills, and also requesting a receipt therefor. It appears that Downs hesitated, and for a time refused to give a receipt to the respondent for the amount of the check, the discussion continuing as to why Downs had disconnected the power-line, and also in relation to Downs having been out there three or four times, having seen the respondent, and having been told to come next time, the respondent stating again that Downs "talked a lie"; that Downs had never seen the respondent. It may be here stated that the respondent had a brother who so nearly resembled the respondent that the appellant, in

preparing its defense, photographed a brother of the respondent under the impression that the photograph was being taken of the respondent. Downs walked over to his automobile, took out a receipt book and began preparing a receipt covering the check delivered him by the respondent. At this juncture and before Downs had completed writing the receipt Downs called the respondent a S—of—a—B. The respondent replied in like language to Downs, whereupon Downs struck the respondent a very heavy blow on the side of the head, felling the respondent to the ground and dazing him for some little time. Downs then completed making out the receipt and handed the same to the respondent.

No issue is raised as to the amount of the damages awarded by the jury.

The appellant first urges that the court adopted the theory that where an agent begins a quarrel while acting within the scope of his agency, and immediately follows it up by assault, the master will be liable, as the law will not under the circumstances undertake to say when, in the course of the assault, he ceased to act as agent and acted upon his own responsibility. While this may be true, the record shows that the blow was struck by the employee of the defendant while he was still engaged in the services of the appellant; that he had not yet completed his duty, and, as we may say, obligation of making out a receipt for the check which he had received, which the law obligated the appellant, through its agent, to deliver to the respondent. (See sec. 1449, Civ. Code, and sec. 2075, Code Civ. Proc.)

Section 2338 of the Civil Code, so far as applicable here, reads as follows: "A principal is responsible to third persons for the negligence of his agent in the transaction of the business of the agency, including wrongful acts committed by such agent in and as a part of the transaction of such business." As we shall hereinafter show this section does not mean that the striking of the respondent by the agent must have been a part of the business authorized by the appellant, but was an act of its agent done while in the transaction of the business of the appellant and within the scope of his authority, to wit, while he was making out a receipt for bills which had just been paid by the respondent.

The appellant first calls our attention to a portion of paragraph 1506 found in 39 C. J., p. 1307, to wit: "On the other hand, if the assault was committed by the servant, not as a means for the purpose of performing the work he was employed to do, but in a spirit of vindictiveness or to gratify personal animosity, or to carry out an independent purpose of his own, then the master is not liable." As we shall hereinafter show, this is not an accurate statement of the law. It is not necessary that the assault should have been made "as a means, or for the purpose of performing the work he was employed to do". The authorities hold that if the assault takes place in the course of the agent's employment, the principal is liable. The language of the code which we have just set forth reads: "Wrongful acts committed by such agent in and as a part of the transaction of such business," not, as appellant would have us hold, for the purpose of transacting the business. This fact being kept in mind, the cases cited by the appellant are readily distinguishable from the facts involved, from what we have here to consider.

In the case of *Yates* v. *Taft Lodge,* 6 Cal. App. (2d) 389 [44 Pac. (2d) 409], relied upon by the appellant, the facts show that the agent of the lodge was employed to take charge of a certain gate and collect admission charges from those desiring to enter the grounds beyond the gate. The assault made by the servant of the lodge had no connection whatever with his duties in relation to collecting admission charges. It arose out of a controversy with one not seeking admission, but over the interpretation of the contract under which the lodge was given charge of the premises being used for picnic purposes.

In the case of *Miller* v. *Citizens Nat. Trust & Sav. Bank,* 1 Cal. App. (2d) 470 [36 Pac. (2d) 1088], the record shows that the acts committed by Wickham were not only outside the scope of his employment, but outside of his authority, and done for the purpose of benefiting himself, involving fraudulent acts of forgery, etc.

In *Figone* v. *Guisti,* 43 Cal. App. 606 [185 Pac. 694], the master had employed his son to assist in waiting upon patrons of a bar maintained by the plaintiff. While in the barroom Figone, a son of the plaintiff, entered the barroom, and in conversation with the defendant's son, threatened

to shanghai the defendant's son. The defendant's son thereupon seized a revolver which was lying behind the bar and shot the plaintiff's son. These facts clearly show the inapplicability of this case in support of appellant's contentions. Had the controversy arisen over a service of drinks by the defendant's son, then the transaction would have been in the course of a business which the defendant's son was authorized to conduct.

The remaining cases cited by the appellant have to do with instances where the agent steps aside from his employment and performs an act not in the course of his employment, but as and for his own benefit, the distinctions in the cases being pointed out in *Ruppe* v. *City of Los Angeles*, 186 Cal. 400 [199 Pac. 496].

In the early case of *Riordan* v. *Gas Consumers' Assn.*, 4 Cal. App. 639 [88 Pac. 809], the court approved the following: "In order to fix the responsibility of the defendant it is not necessary for the plaintiff to prove that the servant for whose tort he seeks damages was, at the time of the commission of the tort, engaged in executing specific commands of the defendant. It is enough for him to prove that the servant was acting within the general scope of his employment, but this much is necessary.

"Whether the act of a servant is within the scope of his duty, while acting in the furtherance of his master's business, is a matter of fact to be determined by the jury, and not by the court as a matter of law." (Citing *Barty* v. *Collins*, 109 Cal. App. 94 [292 Pac. 979]; *Dillon* v. *Prudential etc. Co.*, 75 Cal. App. 266 [242 Pac. 736]; 18 R. C. L., p. 796, sec. 254.)

One of the best considered cases on the subject we are considering is that of *Gulf, C. & S. F. Ry. Co.* v. *Cobb*, (Tex. Civ. App.) 45 S. W. (2d) 323. In that case it is said: "In practically all jurisdictions the law is now settled that a master is liable for the wilful and, malicious acts of his servant when done within the scope of his employment. . . . " The court further says: "It is not the illegal, malicious, unauthorized or negligent act of the servant which is required to be within the scope of the employment, or the authority of the servant, or in furtherance of the master's business, because, under the rule above announced, the master is liable for any such act of the servant which, if

isolated, would not be imputable to the master, but which is so connected with and immediately grows out of another act of the servant imputable to the master, that both acts are treated as one indivisible tort, which, for the purposes of the master's liability, takes its color and quality from the earlier act.'' Quoting further the court said: ''No well-considered case is cited which holds that, when a servant makes an assault upon a third party as the result of a quarrel which immediately grew out of the performance of the duties the servant was employed by the master to do, the master is not liable.'' The court then cites a number of cases where the master was held liable.

To the same effect is the case of *New Ellerslie Fish Club* v. *Stewart,* 123 Ky. 8 [93 S. W. 598, 9 L. R. A. (N. S.) 475].

As illustrating when an act is in the scope of employment, the case of *Richberger* v. *American Express Co.,* 73 Miss. 161 [18 So. 922, 55 Am. St. Rep. 522, 31 L. R. A. 390], is in point. There the plaintiff went to the express company to obtain a return of an overcharge. The agent of the company, after making the refund, abused the plaintiff. It was held that an action would lie.

In *Davis* v. *Merrill,* 133 Va. 69 [112 S. E. 628], the keeper of a gate, after being aroused to let an automobile pass, opened the gate, let the automobile pass, after stating that there were other gates where the parties might have passed, went into the power-house, obtained a gun and fired a shot at the automobile, injuring the plaintiff. It was held that an action would lie against the principal.

The record shows not the reason, but the fact, that Downs refused to give the plaintiff a receipt for his check, and this caused a continuance of the quarrel, and the receipt was not given until after the assault had been committed. The law relative to a master's liability which we think applicable to this case, is well stated in 18 Ruling Case Law, page 797, as follows, to wit: ''Responsibility is not limited to those acts which promote the objects of the employment. Expressions equivalent to 'scope of employment' are, line of duty, in the employer's service, course of the service, transaction of the employer's business, furtherance of the employer's interests, protection of employer's property, and the like. The general idea is that the employee at the time of doing the wrongful

act, in order to fix liability on the employer, must have been acting in behalf of the latter and not on his own account. But every departure by the servant from the strict course of his duty, even for a purpose of his own, will not in and of itself be such a departure from his master's business as will relieve the master of liability for the acts of the servant. The servant may at the same time be combining both his own and his master's business, and in such case the master will be liable for his acts. And where the servant has made a temporary departure from the service of his master, and the object of that departure has been accomplished and the servant reengages in the discharge of his duty, the responsibility of the master for the servant's acts immediately attached.''

Thus, under the law as above stated, if the agent Downs for a few seconds departed from his service in behalf of the appellant and reengaged in it after the assault, liability would still be fixed upon the appellant. The citation from Ruling Case Law, *supra*, also sets forth the meaning of the term ''within the scope of employment''.

In *Ferguson* v. *Rex Spinning Co.*, 196 N. C. 614 [146 S. E. 597, 62 A. L. R. 1430], we find the following: ''It is now fully established that corporations may be held liable for negligent and malicious torts, and that the responsibility will be imputed whenever such wrongs are committed by their employees and agents in the course of their employment and within its scope.'' The opinion in that case then defines ''scope of employment'' as follows: ''Acting within the general scope of his employment means while on duty, and not that the servant was authorized to do such acts.'' (Citing a large number of cases.)

In *Munick* v. *Durham*, 181 N. C. 188 [106 S. E. 665, 24 A. L. R. 538], an assault was committed by the superintendent of a water company upon a patron who had attempted to pay his water bill with pennies. This case, after stating that the master is liable for the malicious act of an agent committed within the scope of his employment, defines ''scope of employment'' as follows: ''Acting within the scope of employment means while on duty.'' The opinion in this case shows careful consideration, and shows clearly that the master is liable even though the act of the agent is wilful, so long as it is committed in the course of his employment,

not that the agent was employed to perform the specific act, but that the agent was in the performance of the duties which he was otherwise ordered and empowered to perform. In the case at bar Downs was unquestionably engaged in the work of his principal, for which he was employed and directed to perform, and brings the act of the assault upon the plaintiff as being performed within the meaning of the term ''scope of employment''.

The judgment is affirmed.

Thompson, J., and Pullen, P. J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on January 2, 1937, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on February 1, 1937.