People *v.* Breyfogle.

## THE PEOPLE *v.* BREYFOGLE *et al.*

A BOND was executed by defendants running thus: "Know all men, by these presents, that, whereas, Charles C. Breyfogle, of Alameda county, State of California, was duly elected Treasurer of said county," etc., now, therefore, we the undersigned, acknowledge ourselves jointly and severally bound unto the State of California in the following sums, respectively: E. A. Harris, as surety in the sum of $5,000; Lemuel Wilson, as surety in the sum of $1,000," and so on in the names of twelve more sureties, concluding with the usual clause, jointly and severally to pay, etc. The condition was that Breyfogle should pay over all moneys according to law which should come into his hands as Treasurer, etc. The bond was signed and sealed by all the parties: *Held,* that this bond shows an obligation on the part of Breyfogle to pay money, and that he and the sureties bound themselves to pay the sums in the bond, each surety for himself in the sum annexed to his name, and the principal for the aggregate of all these sums; the objection that the bond does not pretend to bind the principal being untenable.

The true meaning of the cases holding that a surety may stand upon the precise terms of his contract is, that no strained construction is to be given to his obligation, and that you cannot go beyond the fair import of the terms he employs in order to fasten upon him a liability; but a rational interpretation must be given to the language of his contract so as to reach the meaning of the terms used.

*The City of Sacramento* v. *Dunlap* (14 Cal. 421) and *People* v. *Buster* (11 Id. 215) differ from this case in the facts.

The Act of March 20th, 1850, requiring bonds of County Treasurers to be approved by the Court of Sessions, being special and subsequent to the general Act of February 9th, 1850, imposing the duty of approving the bonds of county officers upon the County Judge, supersedes this latter act in this respect; and as the power of approval given by the former act was transferred by the Act of March 20th, 1855, sec. 25, from the Court of Sessions to the Board of Supervisors, the power of approval now rests with them.

Where the Board of Supervisors accept the bond of a County Treasurer, such acceptance carries with it an approval of the penalty fixed in the bond and of the form and sufficiency of the sureties, and it need not appear otherwise than by such acceptance that the Board fixed the amount of the penalty, or that sureties enough executed it to make at least two sureties for the whole sum.

In suit on the official bond of a County Treasurer for failure to pay over money, legal interest on the amount from the time of defalcation is recoverable.

APPEAL from the Third District.

Suit on the official bond of the Treasurer of Alameda county. Defendants demurred to the complaint, on the grounds: that it does not state facts sufficient to constitute a cause of action, in

this : 1st, it does not show that the Board of Supervisors accepted the bond ; 2d, it does not show that said Board ever by any official act fixed the amount of the penalty of the bond ; 3d, it does not show that sureties enough executed the bond to make in the aggregate two sureties for the whole penal sum in which such Board had ordered a bond to be given ; 4th, it does not show that Columbet, one of the sureties, ever was bound in any sum whatever.

Demurrer overruled, and defendants not answering, final judgment for plaintiff against defendant, Breyfogle, for $40,000, and against each of the sureties for the sum affixed to their names in the bond, the whole judgment to be satisfied when defendants should pay $8,107.37, the amount of the Treasurer's defalcation, with legal interest from the date thereof with costs. The facts appear in the opinion of the Court.

Defendants appeal.

*O. C. Pratt* and *A. M. Crane*, for Appellants.

The complaint on its face setting out the alleged bond in its exact words, showed no liability of the sureties, on account of the absence therein of any pecuniary obligation undertaken by Breyfogle, the principal.

Unless Breyfogle, as principal, was bound by the bond—an official one as it was—to pay some distinctive sum of money to the State if he made default in the discharge of his duties, his sureties would not incur any liability. He must be holden on the bond before the sureties could be liable, and if he is not, the sureties are without obligation, for their liability is dependent on his. ( *City of Sacramento* v. *Dunlap*, 14 Cal. 421.) The just import of the words employed on the bond creates no liability against Breyfogle, and counsel for plaintiff only endeavor to make such liability out by an ingenious transposition of the words employed so as to make a liability appear by implication ; this cannot be done. The liability of a surety is not to be extended by implication. (*Miller* v. *Stewart*, 9 Wheat. 702 ; *Evans* v. *Bradley*, 17 Wend. 422 ; *Hunt* v. *Smith*, Id. 180 ; 5 Ohio, 214 ; *State* v. *Medary*, 17 Id. 565 ; *McGrony* v. *The State*, 20 Id. 93 ; *People* v. *Buster*, 11 Cal. 215 ; 9 Id. 33.)

33

II.  The bond sued on does not conform to the statute, inasmuch as there is no evidence that it ever was approved at all by the Supervisors, County Judge, or anybody else. (Wood's Dig. 77 ; Act concerning Official Bonds, sec. 3 ; 14 Pick. 523.

III.  The complaint fails to show that the Board of Supervisors ever fixed any amount or penalty in which the bond should have been given, or that sureties enough executed it, so as to make the amount equal to at least two sureties for the whole sum.

This is a defect in substance which the eleventh section of said act did not cover.  That section only extends to a want of the substance matter or conditions required by law ; but this is not matter of condition, but the very gist of the obligation.  (*Clapp* v. *Hayward*, 15 Mass. 27 ; *Clapp* v. *Cofran*, 7 Id. 98.)

*Wm. H. Glascock and Saunders & Campbell*, for Respondents.

I.  Respondents claim that this is the bond of Breyfogle as well as of the sureties.  Breyfogle is one of the " we the undersigned ; " and is bound "jointly and severally " with the sureties.

He is one of the " we " who speak in the first and last part of the bond—one of the " undersigned " who twice admit themselves bound jointly and severally for each sum named, and he signs the bond.

II.  But assuming that Breyfogle is not bound, it is then the very case provided for by section 11 Wood's Digest, 77, for preventing the avoidance of official bonds by errors in the forms required.

III.  The Board of Supervisors are the proper parties to approve the Treasurer's bond.  (Act of twenty-seventh February, 50.) Wood's Dig. (712, sec. 2) requires a bond to the acceptance of the Court of Sessions.  Act of twentieth March, 1855, (Wood's Dig. 697, sec. 25) transfers this power of acceptance to the Board of Supervisors.

Defendants cannot object that their bond was accepted without proper examination into its sufficiency by the officers of the law. Neither principal or surety can take advantage of such defect, if it were one, as against a claim for money received and not paid over.  (*People* v. *Edwards*, 9 Cal. 292 ; *Bythou* v. *Walker*, 35 Maine, 132 ; *Sandwich* v. *Fisk*, 2 Gray, 298 ; *Govern* v. *Montgomery*, 2 Swain's Tenn. 613.)

BALDWIN, J. delivered the opinion of the Court—FIELD, C. J. concurring.

Suit was brought against Breyfogle and his sureties on the bond of Breyfogle as County Treasurer of Alameda county, for a considerable sum of money for which he was in default.   The bond is as follows:

" Know all men by these presents, that whereas Charles C. Breyfogle, of Alameda county, in the State of California, was duly elected Treasurer of said county of Alameda at the late general election, held on the second day of September, A. D. 1857 ; Now, therefore, we the undersigned, acknowledge ourselves jointly and severally bound unto the State of California in the following sums, respectively : E. A. Harris as surety in the sum of $5,000 ; Albert Lockwood in the sum of $2,500 ; Lemuel Wilson as surety in the sum of $1,000 ; George W. Boone, surety in the sum of $2,000 ; Clement Columbet as surety for $5,000 ; William P. Toler as surety in the sum of $1,000 ; Hezekiah P. Jones as surety in the sum of $5,000 ; Samuel B. Martin as surety in the sum of $5,500 ; Andrew J. Coffee as surety in the sum of $5,000 ; William H. Davis as surety in the sum of $5,000 ; Dennis Sullivan as surety in the sum of $1,000 ; Joseph Black as surety in the sum of $1,000 ; Benjamin F. Rynders in the sum of $2,000 ; E. D. Brown as surety in the sum of $2,000.   To the payment of which said several sums we respectfully bind ourselves, our heirs, executors and administrators, jointly and severally, firmly by these presents.   Sealed with our seals and dated this twenty-second day of September, A. D. 1857.

" The condition of the above obligation is such, that if the said Charles C. Breyfogle shall pay over all moneys according to law which shall come into his hands, for State, county and other purposes, and shall faithfully and promptly discharge all the duties of his said office that are now or may hereafter be enjoined on him by law, then the above obligation shall be null and void ; otherwise the same shall remain and be in force and effect in law."

[Here follow the names.]

The sureties named justified, and the following indorsements were made on the bond:

" Official, 1857.—Bond of C. C. Breyfogle, Treasurer of Alameda county."

"Filed this 26th day of September, A. D. 1857.    H. M. Vesey, Clerk."

"Approved, October 5th, 1857, by the Board of Supervisors. H. M. Vesey, Clerk.    By J. A. Amerman, Deputy Clerk."

I. The defendants demurred to the complaint which set out this bond and breaches thereof, and assign for error the overruling of the demurrer.

The first and main point made on the demurrer is, that the complaint shows no liability upon the part of the sureties ; the point of this objection being that the bond thus set out does not show any obligation upon the part of Breyfogle to pay money.    We think this ground cannot be maintained.    The language of the instrument is : " *We*, the undersigned" bind ourselves, etc.    It is true that each surety appends to his name the amount for which he is bound as surety ; but the language of the instrument leaves no doubt that the principal was bound in the full amount of the several sums contracted to be paid by the sureties.    The bond is to be taken in all of its parts.    In the first part it recites that " whereas Breyfogle was duly elected Treasurer of Alameda county, now we the undersigned are *jointly* and *severally* bound," etc., " in the following sums respectively : E. A. Harris *as surety* in the sum," etc. Now, with whom was Harris jointly and severally bound ?    Not the other sureties, for each one had stipulated for his several obligation and liability.    The irresistible inference is, that the surety was bound with the principal, one of " the undersigned," who executed the bond.    The counsel for the appellants have cited cases to show that a surety is entitled to stand upon the precise terms of his contract, and that no liability beyond that to be deduced from the terms of the contract is to be raised against the surety by implication.    (9 Wheaton, 702 ; 15 Peters, 208 ; 11 Cal. 215.)    But the answer to this argument is, that nothing is attempted to be raised against the sureties by implication, but that their liability rests upon the fair meaning of the words of their obligation.    We apprehend that the true meaning of the cases is, that no strained construction is to be given to the obligations of sureties, and that it is

not permissible to go beyond the fair import of the terms they employ in order to fasten upon them a liability. But in respect to their contracts, the rule of construction obtains which accords a rational interpretation to the language of their agreements, so as to reach the meaning which the terms used denote. If but two of the sureties signed this bond, there could be no doubt of the meaning; for example, if the bond ran thus: " The undersigned, Breyfogle as principal, and Harris and Lockwood as sureties, agree, jointly and severally, to pay the following sums: Harris, as surety, $1,000 ; Lockwood, as surety, $1,000 "—the conclusion would be from this language that Harris and Lockwood were bound each for $1,000, not jointly and severally with each other, but with the principal. The words " jointly and severally," used in this connection, have a definite and unquestionable signification. They do not apply to the sureties *inter sese,* for each surety indicates by the language he uses that he is to be severally bound as respects the other sureties, in the sum annexed to his name ; but he is jointly bound with some one, and that one is the principal; and the principal also binds himself jointly and severally, and this obligation must be with the sureties. Giving the fair meaning to the terms employed by these parties, and the conclusion seems to us irresistible that the principal and these sureties bound themselves to pay the sums in the bond, each surety for himself in the sum annexed to his name, and the principal for the aggregate of all these sums. The cases of *The City of Sacramento* v. *Dunlap* and *People* v. *Buster* are widely different in the facts from this case.

2. The point that there was no approval of the bond as required by law, if it could in any event be held good, is not supported by the record. It is averred in the complaint that the bond was approved by the Board of Supervisors. By the Act of March 27th, 1850, concerning the office of County Treasurer (Wood's Digest, 712) that officer is required to execute a bond to the acceptance of the Court of Sessions, and by a subsequent act the duties of this character, devolved by previous statutes upon the Court of Sessions, were transferred to the Board of Supervisors. This Act of 27th of March, 1850, is subsequent to the general act imposing the duty of approving bonds of county officers upon the

County Judge, and as the act is special, must be considered as superseding the more general provisions of the first in this regard. The bond having been accepted by the Board of Supervisors, the fact of acceptance must carry with it an approval as to the penalty and to the form and sufficiency of the sureties.

There was no error in giving interest on the money from the time of the defalcation.

Judgment affirmed.