[Civ. No. 453. Fourth Appellate District.—September 28, 1931.]

COUNTY OF IMPERIAL, Respondent, v. J. ROY ADAMS, Defendant; UNITED STATES FIDELITY AND GUARANTY COMPANY (a Corporation), Appellant.

Edward C. Mills for Appellant.

Elmer W. Heald, District Attorney, and C. B. Smith, Deputy District Attorney, for Respondent.

JENNINGS, J.—The County of Imperial instituted this action against J. Roy Adams and the United States Fidelity and Guaranty Company, a corporation, surety upon the official bond of Adams as supervisor of Imperial County, to

recover certain moneys illegally collected and wrongfully received by Adams from the county.

Adams was elected supervisor of Imperial County at the general election held in November, 1920, for a term of four years beginning on the first Monday in January, 1921, and ending on the first Monday in January, 1925. At the general election in November, 1924, he was re-elected to the same office for a second term of four years beginning on the first Monday in January, 1925, and ending on the first Monday in January, 1929. Appellant United States Fidelity and Guaranty Company became surety on the official bond of Adams for each of the two terms and executed a separate bond covering each term in the statutory penal sum of $5,000. The bonds were identical in terms except for the designation of the different terms of office and were conditioned that Adams should ''faithfully perform all official duties that now are, or that may hereafter be imposed upon him or required of him by any law of the state of California''. As such county supervisor Adams was *ex-officio* road commissioner of Road District No. 3 of Imperial County.

Some time subsequent to his assuming the office of supervisor, Adams formulated and put into execution a plan for defrauding Imperial County. This plan was carried on throughout the remainder of his first term and during his second term until the month of April, 1925.

As road commissioner of Road District No. 3, Adams was in charge of the employment of men and teams for the accomplishment of road work in his district.

Pursuant to the plan formulated by Adams he made use of the printed and statutory form for demands against the county to prepare false claims against the county for the performance of road work in his road district, which work was never performed. The demands were made out in the names of three fictitious individuals, George Main, Frank Shubert and Charles Roberts. Each, demand was in the handwriting of Adams.

Following the preparation of each demand, Adams signed the fictitious name of the pretended claimant to the verification appearing on the demand and affixed his name to the jurat showing that the claimant had duly verified the claim before him as supervisor of Imperial County. The demand in this form was filed with the county clerk, as clerk of the

board of supervisors. It was referred by the clerk to the district attorney and when approved by him was presented to the board of supervisors by the clerk.

When the demands were presented to the board of supervisors they were disposed of in the following manner: The demands bearing the approval of Adams were passed to the various members of the board and three or more of the five members constituting the board placed their initials on the demands following the words "Approved by O. K." The demands were thereupon returned to the clerk of the board. These demands then consisted of the demand, a blank warrant attached to the demand and the clerk's memorandum. The clerk then filled out and detached the memorandum, which he retained, and delivered the demand, with the blank warrant attached, to the county auditor, who thereupon made out the warrant for the sum stated in the demand, in the name of the claimant. The warrant was then mailed, in accordance with instructions from Adams, to the claimant named in the demand in care of Adams. Subsequently, Adams having received the warrants, presented them, bearing the purported indorsements of the payees, to the county treasurer, who paid the amounts represented by the warrants to Adams. The moneys thus fraudulently received by Adams amounted to a total of $22,075. Of this sum, the limit of the surety's liability on both bonds was $10,000, and it was stipulated that the surety's liability was further decreased by reason of the fact that any claim for a portion of the funds was barred by the statute of limitations. Judgment was rendered in favor of the county for the full amount sued for against J. Roy Adams, who failed to answer the complaint and for $7,722.50 with interest thereon from March 13, 1926, against the surety on the bonds, United States Fidelity and Guaranty Company. From the judgment thus rendered the bonding company has prosecuted this appeal.

The contention is made that the appellant is not liable for any acts of Adams that were not done in his official capacity and it is said that the acts of Adams in presenting to the county treasurer the warrants made payable to individuals whom he knew to be fictitious, containing the forged indorsements of such fictitious persons, representing payment of demands for work which he knew had not been

performed, and in collecting the sums of money represented by such warrants, amounted to personal delinquencies not done in his official capacity or by color of his office. The contention is not a new one. It was made in *City of Greenville* v. *Anderson,* 58 Ohio St. 463 [51 N. E. 41], where a city clerk had drawn a warrant on the city treasurer for the payment of a claim which had not been allowed by the city council. The Supreme Court of Ohio answered the contention in the following language:

"If the acts of an officer are to be regarded as unofficial whenever they are illegal, an official bond could serve no useful purpose, for there can be no breach so long as he performs his duties according to law. It is only when some duty has been omitted or disregarded or improperly or illegally performed that a liability can arise."

The same contention was made in *Lewis* v. *State,* 65 Miss. 468 [4 South. 429]. The Supreme Court of Mississippi disposed of it in the following language:

"There is much refinement and quibbling in the books in behalf of sureties on official bonds, who are sought to be held responsible for the misconduct of their principal, as to whether the act of the officer was done *colore officii* or *virtute officii,* or whether it constitutes a misfeasance, a malfeasance or a nonfeasance. While the liability of sureties is not to be extended beyond the terms of their engagement, the public is entitled to some consideration as well as the voluntary sponsors of unfaithful public officers; and it must be true that if an officer, under bond to faithfully discharge the duties of his office, does an act as such officer, injurious to the county or to others, in regard to a subject over which he has jurisdiction and control, his sureties cannot escape responsibility for the act, no matter by what technical name it may be called. (Brandt, Sur., sec. 452, Murfee, Off. Bonds, sec. 211; *People* v. *Treadway,* 17 Mich. 480; *Armington* v. *State,* 45 Ind. 10; *Mahaska Co.* v. *Ruan,* 45 Iowa, 328; *Kane* v. *Railroad,* 5 Neb. 105; *Fox* v. *Meacham,* 6 Neb. 530.)"

Section 2639 of the Political Code of California provides that boards of supervisors of the several counties of the state shall have general supervision over the roads in their respective counties and that they must by proper order cause to be worked such highways as are necessary to public convenience. Section 2641 of the same code provides that

boards of supervisors shall divide their respective counties into suitable districts and that each supervisor shall be *ex-officio* road commissioner in his supervisorial district. Section 2645 of the Political Code imposes upon road commissioners, under the direction and supervision and pursuant to orders of the board of supervisors, the duty of taking charge of the highways within their districts and of employing "all men, teams, watering carts, and all help necessary to do the work in their respective districts when the same is not let by contract". The pretended action of Adams in employing the individuals to work on the roads in his district was within his authority as road commissioner and in compliance with the duty imposed upon him as road commissioner under section 2645. In the absence of a contrary showing it may be assumed that it was done under the direction of the board of supervisors of Imperial County, of which board Adams was a member.

 Appellant contends that no report in compliance with the provisions of section 2644 of the Political Code accompanied the demands which form the basis of the present action and that, for this reason, the board of supervisors was without jurisdiction to consider them and that the allowance of such demands by the board, conceding that it took such action upon them, can give rise to no liability on the part of the surety on the official bond of Adams. Section 2644 of the Political Code provides in brief that no claim for labor performed in any road district shall be allowed by the board of supervisors unless the same be accompanied by a report showing where the labor was performed, the nature of the same, and the number of animals and the kind of implements used. The duty is imposed upon the board of supervisors to prescribe rules and blank forms for the making of the required reports. The evidence shows that attached to and forming a part of each demand was a statement relating to the work claimed to have been done by the claimant, for which work compensation was demanded.

Taking as an example the statement forming a part of respondent's exhibit 1, it contains the heading "Road District No. 3 Fund." It gives the total amount demanded and specifies in detail the number of days for which the claimant demands compensation. The following statement is included:

"1 man and 4 up fresno on desert roads." The demand is duly verified by the pretended claimant.

Appellant concedes that the statement substantially complies with section 4075 of the Political Code, which provides that the board of supervisors must not hear or consider any claim in favor of any person against the county nor allow any claim or bill against the county or district fund unless the same be itemized, giving names, dates and particular service rendered, character of work done, number of days engaged, supplies or materials furnished, to whom, and quantity and price paid therefor, duly verified to be correct, and that the amount claimed is justly due. It is to be observed that section 2644 requires that the report shall specify where the labor was performed, the nature of the same, and the number of animals and kind of implements used. The word "fresno" sufficiently designates, in this state, the implement claimed to have been used. The words "four up" in the phrase "one man and 4 up", to one unfamiliar with road work, may appear unintelligible, but in connection with road work it has a definite and accepted meaning and designates the number of animals used with the fresno scraper. There is, to be sure, no specific designation of the exact place where it was claimed the labor was performed, the statement being "on desert roads". This is admittedly a most general description of the place where the labor was claimed to have been performed, even though from the fact that it is entitled "Road District No. 3 fund" we may readily infer that the work was alleged to have been performed in Road District No. 3. Conceivably there may have been a number of desert roads in that particular road district. But the plain object of section 2644 is to give the board of supervisors general information of the character of claims for labor performed on the roads. Its provisions are not nearly so specific as those that are contained in section 4075, which require detailed itemization of all claims against the county. Section 2644 requires the report to show the nature of the work. Section 4075 specifies that the itemized claim shall specify "the character of the work done". Obviously, these expressions mean the same thing and since it is conceded that the claims here under discussion substantially complied with section 4075, the conclusion naturally follows that, as to this particular feature of the nature or character

of the work, there was substantial compliance with the provisions of section 2644.

It is, however, urged that section 2644 specifically designates that claims for labor performed on roads must be accompanied by a report showing the various matters hereinabove enumerated and it would appear from counsel's argument that it is his conception that claims for road work must be accompanied by a separate instrument entitled "report" which shall contain the required information. So strict a construction of section 2644 is unwarranted. The word "report" is sufficiently broad to include the itemization required by section 4075 and there is no requirement that the report contemplated by section 2644 shall be made in an instrument separate and distinct from the claim or demand.

█ It is next urged that there is no evidence that the board of supervisors ever made any direction or order that Adams should employ men and teams to do the road work for which the false demands were drawn. It is pointed out that section 2645 imposes upon county supervisors the duty to employ men and teams for road work under the supervision and pursuant to orders of the county boards. Hence it is argued that it was incumbent upon respondent to produce evidence showing that the board of supervisors of Imperial County had by appropriate order directed Adams to employ men and teams to do the work for which the demands were presented. In the absence of such showing it is said the board of supervisors lacked jurisdiction to consider the demands. But the employment by Adams of men and teams to perform road work is an official duty and it is presumed that it was regularly performed (sec. 1963, Code Civ. Proc., subd. 15) in the manner required by the statute.

█ The objection is next made that there is no showing that the board of supervisors ever took any action as a board approving or allowing the demands of the fictitious claimants. Section 2639 of the Political Code provides that boards of supervisors must by proper order audit all claims on funds set apart for highway purposes and specify the fund or funds from which such claims, either in whole or in part, must be paid. Section 4031 of the Political Code provides that a majority of the board shall constitute a quorum and

that no act of the board shall be valid unless a majority of all the members concur therein. The evidence produced at the trial shows that each demand forming the basis of this action was first approved by Adams in the words appearing on the face of the demand "approved by O. K. J. R. Adams"; that each demand thus approved was passed to the other board members present at the meeting of the board and that two other members placed the initials of their names on the demand immediately after the name of Adams. Taking respondent's exhibit No. 1 as an example, it will be noted that the approval was manifested on the face of the claim as follows: "Approved by O. K. J. R. Adams, G. L. P. JRA." It sufficiently appears from the evidence presented that the letters "G.L.P." constitute the initials of one of the supervisors and letters "JRA" are the initials of a third supervisor. It is therefore not open to question that the demands were actually submitted to and approved by three supervisors, a majority of the five members of the board, at regular meetings of the board. At another place on the demand appears the following language: "Allowed by the Board of Supervisors Apr. 2, 1923, $184.00 out of Road District No. 3 fund. Countersigned W. H. Brooks, chairman of the Board of Supervisors."

This declaration of allowance of the various demands appearing upon them, countersigned by the chairman of the board, together with the approval by a majority of the members of the board at regular meetings of that body, manifested as heretofore described, sufficiently indicates that the board of supervisors did act upon the demands as a board.

■ It is next urged that there is no evidence that any record of the fraudulent demands or of the board's action upon them was ever made in any book except the "Allowance book". Section 4039 of the Political Code provides that boards of supervisors must cause to be kept.

"1. A 'minute book' in which shall be entered the daily proceedings had at all regular and special meetings, and all orders and decisions made by them except such as are required to be recorded in the 'road', 'franchise', or 'ordinance' books.

"2. An 'allowance' book in which must be recorded all orders for the allowance of money from the county treasury,

to whom made and on what account, dating, numbering and indexing the same through each year."

The evidence shows that the board of supervisors of Imperial County caused to be kept a "minute book" and that no reference to the fraudulent demands appears in this book. It also appears that the board caused to be kept an "allowance book" and that in this book entries were made by the clerk of the board showing the words "Road District No. 3" written across the page and under this heading the names of the claimants and the amounts of the demands. It is pointed out that by the provisions of section 4038 of the Political Code it is made the duty of the clerk of the board to "1. Record all the proceedings of the board. 2. Make full entries of all their resolutions and decisions on all questions concerning the raising of money for, and the allowance of accounts against the county." This duty, it is said, the clerk failed to perform and it is argued that the clerk's action in certifying the demands to the auditor as demands regularly allowed by the board, when it appears that no sufficient record of the board's action was made in the manner required by the statutes or that any resolution or decision allowing the claims had in fact been made, was the efficient cause of the loss suffered by the county. It is then further contended that the supervisors in adopting a course of procedure not authorized by law made possible the clerk's action; that broadly speaking the board of supervisors is the county; that the county is the injured party and that, in the final analysis, the county, through the negligence of its board of supervisors, brought about the loss which it sustained. The argument is not persuasive, although it bears the *indicia* of ingenuity. The efficient cause of the loss was the dishonesty of appellant's principal. It was he alone who concocted the scheme. It was he who, as supervisor, utilized the forms provided by the county for demands against the county. It was he who prepared the false demands for labor performed on roads in the district of which he was *ex-officio* road commissioner, in compliance with the duty imposed upon him to employ men to work on the roads. It was he who approved the demands, each of which contained a verification purporting to have been made before him as supervisor and presented them to the clerk as true demands for work actually per-

formed on the roads. He then sat as a member of the board at its regular meetings where the fictitious demands were allowed by a majority of its members. When the demands had been allowed he instructed the auditor to send the warrants by mail to the claimants in care of himself, and when they were received by him he proceeded to forge the names of the supposed claimants, presented them to the county treasurer, received the amounts of money represented by the warrants, and converted the moneys thus fraudulently obtained to his own use. Adams was the efficient actor at every stage of the proceedings and no amount of specious reasoning can conceal the fact that his acts done in ostensible compliance with the duty enjoined upon him by law as *ex-officio* road commissioner were the proximate cause of the loss sustained by the County of Imperial. In *Campbell* v. *People*, 154 Ill. 595 [39 N. E. 578], a county clerk fraudulently increased the amounts for which certain county orders had been issued and authorized by the county board and converted to his own use the excess over the amount allowed. It was the duty of the county treasurer, imposed by statute, to countersign all county orders. This duty the treasurer neglected to perform. In a suit against the clerk and the sureties on his official bond it was contended that the proximate cause of the loss sustained was the negligence of the treasurer. The Supreme Court of Illinois held that the unlawful acts of the clerk were the dominant and efficient cause of the losses sustained by the county and that the sureties were not released from liability because of the negligence or misfeasance of the treasurer. In *Silver Bow County* v. *Davies*, 40 Mont. 418 [107 Pac. 81], the Supreme Court of Montana arrived at a similar conclusion.

The final contention made by appellant is that the trial court erred in allowing interest on the amount for which appellant was found liable on its bonds from the date on which the complaint herein was filed. It is urged that the claim of respondent was uncertain and unliquidated and could not be ascertained from the face of the contract and that interest is recoverable upon a claim of this character only after it is merged in a judgment. It is the general rule that where there is no contract to pay interest, the law awards interest upon money from the time it becomes due and payable, if such time is certain or can be made certain

by calculation. (14 Cal. Jur., p. 678; *Gray* v. *Bekins,* 186 Cal. 389, 399 [199 Pac. 767].) The amount which was due on appellant's contract of suretyship was at least due at the time the action was instituted. This date was certain and appellant was then apprised of the amount claimed. In *People* v. *Breyfogle,* 17 Cal. 504, a judgment against sureties on the official bond of a county treasurer for the amount of his defalcation, together with legal interest from the date of defalcation, was affirmed. The language of the court with reference to the allowance of interest is as follows: "There was no error in giving interest on the money from the time of the defalcation."

The judgment is affirmed.

Barnard, P. J., and Marks, J., concurred.