[Civ. No. 8584. Second Appellate District, Division Two.—October 19, 1934.]

CASSIUS L. MILLER et al., Appellants, v. CITIZENS NATIONAL TRUST & SAVINGS BANK OF LOS ANGELES (a National Banking Association), Respondent.

James P. Mackel and John M. Hall for Appellants.

Mills, Hunter & Dunn and Edward C. Mills for Respondent.

WILLIS, J., *pro tem.*—Appellants, plaintiffs below, brought suit against respondent bank and Paul A. Wickham to recover damages resulting from wrongful and fraudulent acts of Wickham. The case was submitted on the pleadings and a written stipulation of facts which the lower court adopted as its findings, and thereon made its conclusion that plaintiffs were entitled to take nothing from respondent bank.

At the time of the acts complained of herein Wickham was the employee and agent of the bank and was given the title of "Manager Escrow Department" in its Larchmont Avenue branch in Los Angeles. While so employed and engaged in such service, and without any escrow having been opened or any instructions of any party given in or to such escrow department of the bank, he conceived and executed a plan to secure a reconveyance from the trustee in a deed of trust on property which belonged to him, title to which stood in his sister's name, and which deed of trust was existing of record as security for a note belonging to and in the possession of appellants. To accomplish his design and plan he forged a copy of the note as it appeared in the deed of trust and an indorsement showing adjustment of interest, a request for reconveyance and an affidavit, each purporting to be signed by appellants; and to the latter he affixed his jurat and seal as a notary public, for which he was at the time commissioned. He then wrote a letter on the letterhead of respondent bank, addressed to the trustee named in the deed of trust, signing it "Paul A. Wickham, Manager Escrow Department" and inclosing therewith the forged note, request for reconveyance, the affidavit, a copy of the deed of trust certified by the county recorder and a cashier's check for $2.50, which he purchased with his own money although provided by the bank with prenumbered blank voucher checks for use in paying such fees. Relying on the authenticity of these documents and believing the same to pertain to *bona fide* business of the bank, the trustee marked the note as paid and canceled and executed its deed of reconveyance,

which it mailed to respondent with the notation, "attention of Paul A. Wickham". Upon its receipt by Wickham, he signed his name to the formal receipt for it and returned that to the trustee. Thereupon he recorded the deed of reconveyance and at once encumbered the property, through his sister who held the legal title, with two new deeds of trust, as security for notes aggregating $7,500. Default was subsequently declared on one of these trust deed notes and at the time of trial herein the trustee was prosecuting a sale under the trust deed.

For the loss of their security on their note, and because the makers thereof are insolvent, appellants herein seek to recover from the bank, as employer of Wickham, the damages resulting therefrom, to wit, $6,482.63, unpaid principal on the note, together with interest at the legal rate from February 24, 1931; it being stipulated herein that the real property described in the original deed of trust securing their note was, during all the times herein involved, of the value of $6,500. Upon the facts stipulated and found, the following conclusions or ultimate facts appear, which are pertinent and significant on this appeal: 1. That respondent bank was not negligent in any respect in the matter of employment of Wickham as manager of its escrow department; that it has never ratified his wrongful acts and that these acts were done for his sole benefit and not for the bank. 2. That under his employment he had authority to forward necessary documents to trustees to secure reconveyances, and accept them on behalf of trustors, only when an escrow was opened in the bank and instructions filed therein for such purpose. 3. That the wrongful acts committed by Wickham in this case were not within the scope of his employment by respondent bank.

The stipulation of facts from which it follows that the bank was not negligent in placing Wickham in the position of manager of its escrow department eliminates from consideration herein the question of liability of respondent under the law of negligence.

The conclusions numbered 2 and 3 above may be read together, and when so read absolve the bank from any liability under the doctrine of *respondeat superior*, as it operates on the relationship of master and servant, and renders it un-

necessary to consult or review those cases, whose number are legion, which deal with that doctrine as it affects the master for his servant's acts.

██  As a consequence of these stipulations, with their resultant eliminations, and appellants' contention that their case is to be determined under the law of agency, there remains but one question herein, and that a question of fact, because the law is settled in its application and effect once that fact is determined. That question is: When Wickham committed and performed the wrongful acts herein stipulated and found, were they committed by such agent in and as a part of the transaction of the business of his agency with respondent bank? Obviously the trial court concluded that they were not, although that ultimate fact was not found as such in the lower court's decision. In its conclusions of law and judgment, however, the court concluded and adjudged that plaintiffs were not entitled to judgment against the bank on the stipulated facts. It is a necessary implication therefrom that the trial court found, under the probative facts stipulated, that Wickham did not commit the wrongful acts in question in and as a part of the transaction of the business of his agency. If that finding is supported by the stipulated facts, then the judgment appealed from is correct under the law. If not supported, the judgment should be reversed.

Section 2330 of the Civil Code provides in part: "An agent represents his principal for all purposes within the scope of his actual and ostensible authority." Ostensible authority is such as a principal, intentionally or by want of ordinary care, causes or allows a third person to believe the agent to possess (Civ. Code, sec. 2317); and the principal, under merely ostensible authority, is bound only to those persons who have in good faith and without want of ordinary care incurred a liability or parted with value upon the faith thereof. (Civ. Code, sec. 2334.) Eliminating, as obviously not pertinent herein, the subject of ostensible authority, we turn to the law as declared in Civil Code, sections 2338 and 2339, respecting responsibility of the principal for wrongful acts of his agent.

Section 2338 reads as follows: "Unless required by or under the authority of law to employ that particular agent,

a principal is responsible to third persons for the negligence of his agent in the transaction of the business of the agency, including wrongful acts committed by such agent in and as a part of the transaction of such business, and for his willful omission to fulfill the obligations of the principal.'' Section 2339 reads: ''A principal is responsible for no other wrongs committed by his agent than those mentioned in the last section, unless he has authorized or ratified them, even though they are committed while the agent is engaged in his service.''

Section 2338, *supra,* may be divided into two parts, one providing for liability of the principal for negligence of his agent in the transaction of the business of the agency, the other providing for liability of the principal for the wrongful acts committed by the agent in and as a part of the transaction of the business of the agency. It has been held that the word ''including'', between the two parts, is equivalent to ''and also'', or ''as well as'', and thus construed the part relating to wrongful acts is separated from the part relating to negligence, making the two independent parts above stated. (*Johnson* v. *Monson,* 183 Cal. 149 [190 Pac. 635].) The charge herein not being based on negligence of the agent, the sole remaining ground of liability of respondent must be found in the facts as affected by the second part of the section quoted, read in connection with section 2339.

Appellants contend that upon the facts of this case the principle that where one of two innocent persons must suffer for the wrongful acts of the agent of one of them, the principal, who put it in the power of the agent to do such acts, must sustain the loss occasioned by their commission, controls. In support they cite the so-called ''telegraph company cases'', relying chiefly on *Pacific Postal Tel. Cable Co.* v. *Bank of Palo Alto,* 109 Fed. 369 [54 L. R. A. 711]. In that case the Circuit Court of Appeals, Ninth Circuit, at the beginning of its opinion announced that the general rule as to liability of a corporation for the acts of its agents, servants or employees acting within the scope of their authority, and in the performance of duties regularly entrusted to them, was not called into question, but that in a certain sense the court was called upon to deal solely with exceptions

to the general rule; and that in another sense it might be said that telegraph corporations stand upon a different plane from that of other corporations engaged in other kinds of business, and in some particulars stand in a position of their own. Therein the court held the telegraph company liable for the fraudulent acts of its employee operator in sending a false telegraphic order for money, and in so holding expressly declared that such liability was based on a rule of law which was founded on the principle that if one of two innocent persons must suffer loss by the act of a third, he who put it in the power of the third person to do such act should be compelled to sustain the loss occasioned by its commission. But in deciding that case and before applying this principle, the court expressly declared that in the case of a telegraph company agent or employee sending a false or forged telegram over his employer's lines, he would be acting in the direct course of his employment, viz., transmitting messages, although outside of the scope of his authority, saying: "The company is held liable because it has placed its agent and operator in charge of its appliances and instruments for the transmission of dispatches over its lines, and authorized them to use the same." In that connection that court cited the case of *Bank of California* v. *Western Union Tel. Co.*, 52 Cal. 280, wherein the Supreme Court of this state said: "If an agent of a telegraph company, whose duty it is to send genuine messages, shall willfully and fraudulently send a dispatch in the name of another, this wrong act is as much done 'in the course of his employment' as if he had negligently sent a forged message. . . . The agent is authorized to transmit messages, and the transmission of a false message, whether contrived by himself or contrived by another and negligently sent by him, is within the course of his employment." Therein is also cited the case of *McCord* v. *Western Union Tel. Co.*, 39 Minn. 181 [39 N. W. 315, 317, 12 Am. St. Rep. 636, 1 L. R. A. 143], where the Minnesota Supreme Court, citing the above-mentioned California case, said: "The defendant selected his agent, placed him in charge of its business at the station in question, and authorized him to send messages over its line. Persons receiving dispatches in the usual course of business, when there is nothing to excite suspicion,

are entitled to rely upon the presumption that the agents entrusted with the performance of the business of the company have faithfully and honestly discharged the duty owed by it to its patrons, and that they would not knowingly send a false or forged message. . . . If the corporation fails in the performance of its duty through the neglect or fraud of the agent whom it has delegated to perform it, the master is responsible. It was the business of the agent to send messages of a similar character, and such acts were within the scope of his employment.''

Appellants cite the case of *Henry Cowell Lime & Cement Co.* v. *Santa Cruz County Nat. Bank,* 82 Cal. App. 519 [255 Pac. 881]. Therein the court held that the evidence supported the finding that the bank's bookkeeper had ostensible authority to receive and indorse checks of customers. Under such authority he had indorsed and cashed certain checks and appropriated the proceeds to his own use. The main issue in that case was that of ostensible authority, and all that was said by the court in respect to liability of the principal was predicated on the proposition that the wrongful acts of the agent were committed in and as a part of the agency.

The case of *Otis Elevator Co.* v. *First Nat. Bank,* 163 Cal. 31 [124 Pac. 704, 41 L. R. A. (N. S.) 529], cited by appellants, presents clearly a case wherein estoppel to deny responsibility for wrongful acts of an agent was sustained as a defense offered by the bank in justification of its cashing of forged checks, thus overcoming the effect of the general rule that banks pay forged checks at their peril. The court quotes the substance of section 2338 of the Civil Code, and from Story on Agency, section 452, quotes the following: ''In such cases the rule applies *respondeat superior;* and it is founded upon public policy and convenience, for in no other way could there be any safety to third parties in dealings either directly with the principal or indirectly through the instrumentality of agents. In every such case the principal holds out the agent as competent and fitted to be trusted; and thereby, in effect, he warrants his fidelity and good conduct in all matters within the scope of his agency.'' The court then referred with approval to the so-called telegraph cases, in the particular already herein mentioned.

The case of *Blair* v. *Guarantee Title Co., Inc.*, 103 Cal. App. 260 [284 Pac. 719], is an escrow proceeding in which the title company was held liable on the ground that the act of the escrow man was within the scope of his duty. The case of *Imperial County* v. *Adams*, 117 Cal. App. 220 [3 Pac. (2d) 953], cited by appellants, is not in point, and *National Bank of San Mateo* v. *Whitney*, 181 Cal. 202 [183 Pac. 789, 8 A. L. R. 298], was decided upon the "scope of duty" principle.

The foregoing review of the cases relied upon by appellants has been deemed necessary in order to show that in this case there is no basis for invoking the principles relied on by them to affix liability on respondent bank. The basis of liability herein is to be found in sections 2338 and 2339 of the Civil Code above quoted, and it is clear from the analysis of the cited authorities that therein the same basis was used, for in all of them the relief granted was grounded on the fact that the wrongful acts complained of were done in and as part of the transaction of the principal's business.

Herein a crime was the proximate cause of the injury to appellants. In such a case the maxim that where one of two innocent persons must suffer from the wrongful act of another the loss must fall on the one making the act possible has no application. (*Walsh* v. *Hunt,* 120 Cal. 47 [52 Pac. 115, 39 L. R. A. 697].)

The acts committed by Wickham were not only admittedly outside the scope of his employment, but were outside the scope of his authority and were not done in performance of any part of his principal's business. Even though such wrongful acts were committed while he was engaged in his principal's service, the principal is not responsible unless they were committed in and as a part of the transaction of the principal's business. (Civ. Code, secs. 2338, 2339.) "The liability of a master does not extend to willful or malicious acts of the servant done while engaged in the master's service but independent of that service and for the servant's own benefit. And this is true even where the employment furnishes the opportunity for the wrong doing." (*Copelin* v. *Berlin Dye Works etc. Co.,* 168 Cal. 715 [144 Pac. 961, L. R. A. 1915C, 712].) To the same effect are *Stephenson* v. *Southern Pac. Co.,* 93 Cal. 558

[29 Pac. 234, 27 Am. St. Rep. 223, 15 L. R. A. 475], and *Riordan* v. *Gas Consumers' Assn.*, 4 Cal. App. 639 [88 Pac. 809]. Such is the rule as affecting the relationship of master and servant. Precisely the same rule is attached to and governs the relationship of principal and agent, being clothed only in different language as it is written in sections 2338 and 2339 of the Civil Code.

The judgment is affirmed.

Stephens, P. J., and Desmond, J., concurred.

A petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on December 17, 1934.