THOMAS, Justice.
In the consideration of this case we are concerned with the relevant provisions of Chapter 678, Florida Statutes 1953, and F.S.A., the Warehouse Receipts Act.
In the appellee’s complaint it was alleged that the appellee deposited with the appellant, “a warehouseman as defined” in the act, a large quantity of telephone directories which were in good condition, and paid the appellant for the storage.
It was charged that while the books were in the appellant’s hands the appellant “failed in its statutory duty to exercise such care in regard to [the property] as a reasonably careful owner of similar goods would exercise” and as a consequence the directories were so damaged that they were worthless, except for a nominal amount received for them as salvage. The plaintiff averred that the directories would have been worth approximately $24,000 had the defendant exercised the care stipulated in Sec. 678.21 of the Act, but that as a consequence of the violation of this duty their value was reduced to about $600.
It seems appropriate here to give the substance of Sec. 678.21 which is titled “Liability for care of goods.” By its terms a warehouseman is responsible for injury to goods resulting from “his failure to exercise such care * * * as a reasonably careful owner of similar goods would exercise,” but in the absence of an agreement to the contrary he is not liable for damage “which could not have been avoided by the exercise of such care.”
The defendant filed a plea of not guilty, a plea denying each allegation of the complaint and six defensive pleas.
Twice each year the appellee has telephone directories printed for use of its subscribers in the Miami area and it engages Crumbley Distributing Company to deliver the books to its customers. To perform the work the distributors must have a central location from which to operate. In the process of distribution, appel-lee’s representatives continuously inspect the distributor’s work. The appellee secured from the appellant, by verbal agreement, space in the latter’s warehouse for use as a base from which distribution of the directories would be made. Some deliveries, in bulk, were made by the appellant to various points in Miami for which it was compensated.
*291 The building, described as a “warehouse-type” was located adjacent to the tracks of Seaboard Air Line Railroad. The appellant was primarily engaged in transferring merchandise. The goods were received, generally in carload lots, at the warehouse in question which served as a freight terminal, and were re-shipped in appellant’s own trucks to various consignees.
By their agreement the appellant was to store the surplus directories in its warehouse after the immediate distribution had been completed. This is the phase of the transaction involved in this litigation. From the nature of the property, deliveries were frequently being made even after the distributing company had finished its work, so the charge for storage was based on the number, in hundreds, of the books on hand from time to time.
The property placed in the custody of the appellant was, in this sense, fluid. The distributing company in a relatively short time delivered the bulk of the directories; Afterward deliveries to new subscribers and to replace lost or stolen directories continued and the stock diminished accordingly. Payment for storage was based on the number of directories on hand from time to time, and the appellant seems to have taken the word of tire appellee for the number on which the charge should be periodically computed. The representatives of the appellee necessarily had free access to the building but as they had no key they could enter the warehouse only when it had been opened by the employees of appellant.
During the distribution period, but after the appellee had stored surplus of the stock in the place assigned, fire of unknown origin occurred. It was discovered by appellant’s terminal manager who attempted to' extinguish it with ordinary “wall-type soda-acid” fire extinguishers which were found to be ineffective.
The appellant first asked whether or not the trial court erred by his refusal to direct a verdict for the defendant when there was no substantial evidence that it maintained fire-fighting equipment in a manner other than a reasonably prudent warehouseman would have done.
In the Act, Sec. 678.54, a warehouseman is defined as “a person lawfully engaged in the business of storing goods for profit.” For the purpose of the argument addressed to the immediate question, the appellant assumes that the relationship of the parties was that of commercial warehouseman-bailor and argues that there was no proof of failure on its part to exercise the care described in the complaint and required by the statute, from both of which we have quoted. The appellant argues that there was no evidence setting any standard of care that should have been observed by a bailee in its position, or to show what fire-fighting equipment should have been maintained. Moreover that there was no proof that any city ordinance had been violated, or that there was need for a sprinkler system or alarm systems or for ready axes. It is also argued that due care was exercised because all fire extinguishers on the property of the Seaboard Air Line Railroad, the owner and lessor of the warehouse, were maintained by an employee of the owner in an approved manner, and that the extinguishers were inspected and refilled periodically, and were to be re-charged on a date two days after the fire.
The testimony of the person who was supposed to test the fire extinguishers was unsatisfactory, to say the least, and the jury were thoroughly justified in rejecting it; and even had it been more nearly convincing, the jury would not have been warranted in finding that because of some arrangement in that respect between the lessor and its agent, the appellant-lessee and-bailee could escape liability for failure to discharge duty owed by it direct to the appellee.
Employees of the appellee had not been on the premises for two hours preceding the discovery of the fire and no one knew just how it started. We think this phase of the case may be decided on the fact *292 that no equipment for fighting fire was present, except worthless extinguishers; and on the question whether or not this situation demonstrated want of that care which would be expected of a cautious owner of similar goods. The jury were privileged to believe testimony of witnesses that three fire extinguishers were tried and all were found deficient, and of an expert witness that one good extinguisher would have sufficed to control the fire, and two would have been sufficient to quench it.
We think the presence or absence of proper care was a question to be resolved by the jury. Runkle v. Southern Pac. Milling Co., 184 Cal. 714, 195 P. 398, 16 A.L.R. 275; Exporters’ & Traders’ Compress & Warehouse Co. v. Shaw, Tex. Civ.App., 20 S.W.2d 248.
There was abundant reason for the verdict and judgment which constituted a finding and adjudication that the care exacted of warehousemen by the statute had not been forthcoming.
In the argument of the second question, it is contended that the appellant was not a warehouseman. It is said that no warehouse receipts were issued and that the appellant was “not generally nor regularly engaged in the commercial warehousing business” but was operating as a transfer company.
Replying, the appellee refers to the definition of a warehouseman we have already quoted .and to indicia of the appellant’s status- appearing in the record. For instance, the letterhead of the appellant listed its activities as commercial hauling, warehousing, and so on. In a letter, written on its stationery, the president of appellant-corporation confirmed a conversation between him and the “District Directory Manager” of appellee-corporation, quoting the charge that would be made for services and facilities including “Storage (per month, per bundle) 3‡.” In a later letter, on the same stationery, the president of appellant-corporation wrote : “The supply of extra directories are being stored in our warehouse * * On invoices issued by appellant-corporation appear notations about books “Returned to Whse.” As for the absence of warehouse receipts, the ap-pellee points to Sec. 678.01 which contains the simple sentence: “Warehouse receipts may be issued” indicating, of course, that issuance is permissive but not mandatory. (Italics supplied.)
When the salient facts on which the appellee relies are juxtaposed with those on which the appellant depends, we conclude from the comparison that the former definitely preponderate and establish that the latter was, and intended to be, a warehouseman and in that capacity performed services and furnished facilities for a profit.
Adverting to the first question, we conclude that as a warehouseman the appellant did not meet the burden placed upon it by the Act and that it was properly held accountable for the- default.
Having come to these views by our study of what we consider the pivotal points in the case, we wonder what would be accomplished by a discussion and decision of the procedural question- blended with the ones we have discussed, that is, whether or not the judge should have construed the arrangement between the parties as a matter of law instead of submitting the matter to the jury as one of fact. During the trial when the course he should follow was being argued he said: “ * * * I will state for the record that if the Court has to rule on it, I will rule he [sic] is a warehouseman in this case.” Our opinion coincides with his. This being the case it would be a mere gesture to reverse the judgment on the ground that there was error in the procedure. If there was error, which we do not decide, it has now become harmless.
Our conclusion is that the appellee properly prevailed.
Affirmed.
DREW, C. J., and ROBERTS and O’CONNELL, JJ., concur.